SMITH, APPELLEE, *v.* McDOUGALL, APPELLANT.

(Decided April 1, 1940.)

*Mr. Mark Winchester,* for appellee.

*Messrs. Fraser, Effler, Shumaker & Winn,* for appellant.

CARPENTER, J. This was an action for alleged malpractice by the defendant, a dentist, in extracting a tooth for plaintiff. The verdict and judgment were for the plaintiff, and defendant filed this appeal on questions of law. The only errors seriously assigned are that the court failed to grant the defendant's motions for a directed verdict or enter judgment for him notwithstanding the verdict, or, if not a final judgment, in not granting a new trial for the reason that the verdict was manifestly against the weight of the evidence.

The negligence pleaded and submitted to the jury was that "defendant did not use due and proper care and skill in the extraction of said tooth and left a portion of the tooth still imbedded in the bony structure of plaintiff's jaw."

Many of the essential facts are practically undisputed. A year or so prior to October 12, 1937, plaintiff had had other dentists remove all of the teeth from his lower jaw except the left cuspid. "About the day before" October 12, 1937, he experienced some pain in that tooth, and that day went to defendant's office, employed him to extract the tooth and paid him one dollar for the service.

Intense pain followed the removal of the tooth and the jaw began to swell. The next day a physician was called and he gave some palliatives to relieve the pain, but did nothing to the jaw. The pain and swelling continued and later, plaintiff testified it was within a week and defendant from his records says November 10th, he consulted defendant at his office where he took an X-ray of the area where the tooth had been and prescribed heat applications to reduce the swelling. At that time the defendant testified that swelling on the jaw was "about the size of a hickory nut," and

"on the inside there was some swelling and some redness of the tissues." For several days following this, plaintiff consulted with defendant, who continued to prescribe heat treatments which were ineffective. Later two abscesses formed on the gum and broke inside the mouth, and January 12, 1938, a physician-surgeon whom plaintiff consulted found he had a temperature of 100.8 degrees from a "low grade infection." This condition continued until January 21, 1938, when the surgeon operated by opening the gum and cutting down to the infected processes, and, he testified "then we took and thoroughly curreted the cavity after removing the debris; examined the debris with the necrosed bone, that was removed and we found a very small portion of a tooth that had either separated from the original tooth or had been retained in the cavity. It was broken off from—it was not the entire root, but a very small portion of the root."

The doctor was then asked, "Do you know what tooth that was?" He answered, "It was a bicuspid."

Defendant now claims that answer destroys all of the force the testimony of this doctor-witness may have had because he was not talking about the same tooth defendant extracted. If the matter stood on that question and answer alone, that might be true, but it is evident from the whole record that, either the doctor misspoke or was mistaken about the name of the tooth involved. Shortly following the above question and answer there was propounded to the doctor a hypothetical question relating to what had taken place with reference to this "cuspid tooth" before he treated plaintiff, and then referring to what he found and what he did, the doctor was asked his opinion as to what caused the condition he found. His answer was:

"The man evidently had an infection of the tooth before it was extracted and the small fragment of root that was evidently left behind did not get rid of the

infection entirely, and the infection continued, which produced the necrosis."

On cross-examination this doctor was asked:

"Q. How many cavities did you find there? A. One.

"Q. How many teeth did this fellow have in the lower jaw? A. As far as I remember that was the last one he had."

From the whole record it appears that there was under consideration but one tooth and the cavity where it had been, that was the one extracted, and its location was the one where the swelling centered which the defendant later examined and X-rayed. Of the area included in his picture he said, "It covers the region from the area next to the incisors, dropping back into the region of the second bicuspid," and of it he said, "There is no part of the root of any tooth in the picture." It does not appear from the record that any trouble resulted from any of the previous extractions from the lower jaw, or that anything in connection with them might have caused any of the difficulties complained of here. So whether he was wrong in saying it was the cuspid or the surgeon was wrong when he said it was a bicuspid, it is clear they were both talking about the same tooth.

The real problem in this case is whether, under the circumstances, it was necessary for the plaintiff to offer the expert testimony of some dentist that something defendant did or failed to do in extracting the tooth, which ordinary care required of him, was the proximate cause of the trouble plaintiff experienced following the tooth extraction.

The surgeon who operated in January said he found a part of the root of the tooth in the cavity, that it was dead and infected and caused the disturbance which troubled the plaintiff. He also said it was his opinion that the tooth was infected before it was extracted. After the necrosed part of the root was removed and

the cavity cleaned up, the disturbance subsided, and the jaw healed, which would indicate to even a layman the previous presence of infection.

The defendant testified that he "made a complete extraction of it" (meaning the tooth); also that the X-ray of the area of the jaw which he took November 10th showed that "There is no part of the root of any tooth in the picture." As the record of the evidence stands, the only controversy between the parties was as to whether the defendant removed all of the tooth as he impliedly contracted with plaintiff to do. He says he did, and that his subsequent X-ray test confirms his belief that he did. By his vigorous insistence that he did remove all of the tooth he says inferentially that had there remained in the cavity any part of that tooth it would have been his duty to remove it, and his failure so to do would have been improper dental practice and negligence, whereas the surgeon testified that in this cavity three months after the extraction he found and removed therefrom a small part of the root of the tooth.

If the jury believed the testimony of the surgeon, then from his own testimony, it would be justified in finding the defendant had not exercised the degree of care, skill and diligence which the law imposed, which was such as dentists practicing their profession in the same or similar localities are accustomed to exercise under the same or similar circumstances.

Does such a situation as this require the testimony of an expert to enable the jury to determine whether or not the defendant was negligent in the performance of his contract with plaintiff, and whether such negligence proximately caused the damages of which plaintiff complains?

Expert evidence is not required in all malpractice cases. This was recognized in *Hubach* v. *Cole,* 133 Ohio St., 137, 12 N. E. (2d), 283, at page 142 of the opinion which, after stating that "* * * the requisite standard

of care and skill is a matter which must ordinarily be determined from the testimony of medical experts," said:

"But the statements and acts of the defendant physician, as well as external appearances and manifest conditions which are observable by anyone, may be given by non-expert witnesses. And such testimony by lay witnesses may show a course of conduct with ensuing results of such a character as to warrant the inference of want of care."

In *Francis* v. *Brooks*, 24 Ohio App., 136, 156 N. E., 609, this court, Judge Richards speaking, said on page 141:

"If a violation of the defendant's duty to his patient appears from other competent evidence in the case, the plaintiff might certainly refrain with safety from calling expert witnesses."

With the testimony of the surgeon who operated upon plaintiff and his information as to what he found and his opinion that the tooth was infected before it was removed and that the leaving of a part of the infected root caused the plaintiff's trouble, the jury had material technical information, and if it believed that doctor and did not believe the defendant, there was substantial evidence to support its verdict, and neither the trial court could nor can this court now say there was no evidence on the issues of negligence and proximate cause. In the opinion of this court the verdict is not manifestly against the weight of the evidence.

Finding no prejudicial error, the judgment is affirmed.

*Judgment affirmed.*

OVERMYER and LLOYD, JJ., concur.