The specifications of error have not been discussed *seriatim,* for the reason that they are interwoven, but our view on all of them is expressed in this general discussion, and the authorities cited.

As before stated, under the facts of the case, the only defense that could have been made by the bank was estoppel. The evidence not presenting a state of facts within the rule required to create estoppel, the judgment of the court of common pleas was correct, and will be affirmed.

*Judgment affirmed.*

BUCHWALTER, P. J., and CUSHING, J., concur.

---

FRANCIS v. BROOKS.

*Physician and surgeon—Malpractice by dentist—Damages for removing tooth without patient's consent—Question for jury—Expert testimony of malpractice not essential, when —Verdict not against weight of evidence—Limitation of actions—Separate cause for assault and battery not stated by amended petition—Special request covered by general charge to jury—Injury to patient not proof of negligence— Condition of patient's jawbone as evidence of negligence in extracting—New trial—Newly discovered evidence cumulative—Verdict for damages not excessive.*

1. In action by patient to recover damages for malpractice by dentist, if jury found that, while patient was unconscious from taking gas, dentist removed impacted tooth without her consent, causing injury, it would be justified in rendering verdict for damages naturally and proximately flowing therefrom.

2. In action by patient to recover damages for malpractice by

dentist, whether dentist removed impacted tooth without patient's consent, causing injury, was question of fact for jury.

3. Expert testimony is not essential in all cases to enable jury to determine whether physician, surgeon, or dentist has been guilty of malpractice, and, if violation of physician's duty to patient appears otherwise, plaintiff may refrain from calling expert witnesses.

4. In action by patient to recover damages for malpractice by dentist, under testimony of dentist as to process he followed in removing bone surrounding impacted tooth, from which injury resulted, and testimony of other witnesses, general verdict for patient *held* not clearly against weight of evidence, nor required to be supported by expert testimony.

5. In action by patient, to recover damages for malpractice by dentist, amendment to petition alleging that extraction of particular tooth, which caused injury, was without patient's consent, did not state separate cause of action for assault and battery, and refusal to allow plea of statute of limitations to assault and battery was not error.

6. In action by patient to recover damages for malpractice by dentist, the general charge, that injury suffered by patient is not of itself alone proof of negligence by dentist, sufficiently covered requested charge that injury in extraction of tooth is not slightest evidence that dentist was negligent.

7. In action by patient to recover damages for malpractice by dentist, requested charge that condition of patient's jawbone at time of trial, or when treatment ceased, could not be considered as any evidence of negligence in extracting tooth, *held* properly refused.

8. Newly discovered evidence, which is merely cumulative, does not justify the granting of a new trial.

9. In action by patient 26 years old against dentist for malpractice, resulting in patient's being unable to open mouth further than thickness of pencil, partial misplacement of jawbone, partly destroying ability to bite food, and severance of sensory nerve on one side of mouth, verdict of $12,500 was not excessive.

(Decided December 6, 1926.)

ERROR:   Court of Appeals for Lucas county.

*Messrs. Smith, Baker, Effler & Eastman,* for plaintiff in error.
*Mr. Edward H. Ray,* and *Mr. Raymond Ladd,* for defendant in error.

RICHARDS, J.   The original action was commenced in the court of common pleas by Mrs. Brooks for the purpose of recovering damages claimed to have been suffered by reason of malpractice on the part of the defendant.   The trial resulted in a verdict and judgment in her favor for $12,500, and this judgment is now sought to be reversed.

The bill of exceptions discloses that Mrs. Brooks had been having trouble with some of her teeth, and had consulted a Dr. Bennett with reference to their removal.   X-ray pictures were taken showing the teeth, and upon the X-ray plate Dr. Bennett marked nine teeth for removal, and recommended his patient to go to Dr. Francis for the purpose of having the teeth extracted.   Shortly after this Mrs. Brooks went to Dr. Francis, taking with her the X-ray plate showing the nine teeth marked to be extracted.   Dr. Francis examined the plate and the patient's mouth, and discovered that she had an impacted, unerupted bicuspid tooth on the right side of the lower jaw.   This tooth was not one of those marked to be extracted, but Dr. Francis believed that it should be extracted with the others, and so informed Mrs. Brooks.

The entire controversy in this case arises out of the extraction of this impacted, unerupted second bicuspid, resulting in the breaking of the patient's

jaw.   Mrs. Brooks objected to the extraction of this tooth, asserting that Dr. Bennett had stated that to remove this tooth would require more of a surgical operation than a mere extraction.   Thereupon Dr. Francis called Dr. Bennett on the phone, and told him in substance that this impacted tooth was very liable to cause injury to Mrs. Brooks, and that it ought to be extracted with the others. Dr. Bennett stated that Mrs. Brooks was in Dr. Francis' office, and that the matter of extracting this particular tooth was up to them.   Dr. Francis' testimony is to the effect that he talked the matter over further with Mrs. Brooks, and that she finally consented that he should extract this tooth, but she emphatically denies that she ever gave any such consent, and insists that she told him it should not be extracted.   There is some corroboration of each of the parties as to their respective claims on this matter.

Mrs. Brooks was given an anæsthetic, and thereupon Dr. Francis extracted eight of the teeth marked for extraction, and then proceeded to extract the second lower impacted and unerupted bicuspid.   In doing so the patient's lower jaw was broken; the fracture being directly at the place where the impacted tooth was removed.   The doctor reset the jaw, but the resetting is claimed not to have been skillfully done, and it is claimed that the jaw is left in such condition that she cannot use it to any advantage in masticating food.

The case naturally raises two questions for determination:   First, whether this impacted tooth was extracted without the patient's consent; second, whether the dentist was guilty of malpractice in

the performance of the operation in extracting this tooth, and included in this latter subdivision is the question whether there was malpractice in the reduction and treatment of the fractured jaw.

It would serve no useful purpose to review in detail the large amount of evidence taken on the trial of this case. We have read this evidence with much care, and our conclusion is that a finding by the jury that Mrs. Brooks did not consent to the removal of the tooth in question would not be manifestly against the weight of the evidence. The verdict is a general one for the plaintiff, and there were no interrogatories, so we are not able to ascertain the processes by which the jury reached the verdict. If the jury found that, while she was unconscious from the taking of gas, the defendant removed the impacted tooth without her consent, it would be justified in rendering a verdict in her favor for such damages as naturally and proximately flowed therefrom. That question was a simple question of fact to be determined by the jury from the evidence, and required no expert testimony.

It is insisted that there could properly be no verdict for the plaintiff, because there was no expert evidence introduced on which such a verdict could be based, and, on the other aspect of the case, namely, the question of whether the doctor was guilty of malpractice in the method of performing the operation, that matter is important. It is quite conceivable that cases arise in which the existence of expert testimony is essential to enable a jury to determine whether a physician, surgeon, or dentist has been guilty of malpractice, but it is not

true that such testimony is necessary in all cases. If a violation of the defendant's duty to his patient appears from other competent evidence in the case, the plaintiff might certainly refrain with safety from calling expert witnesses. The material portion of the testimony of Dr. Francis, so far as it relates to the manner in which the extracting was done, is as follows:

"Mr. Eastman: Q. Now just describe to the jury what you did in this operation with respect to the removal of this lower right second bicuspid, just what you did after you started to remove that tooth. A. I first uncovered, in other words, dissecting the gum back, and dissecting away the bone to uncover the crown. I then placed a forcep on it, and tried to loosen the tooth, which I found I could not without a great deal—or more strain than I felt should be placed on it. I then turned back to dissecting away more bone.

"Q. How did you do that? A. This was done mostly by a drill, a small drill, enlarging the socket.

"Q. Is that way an approved method of extracting teeth? A. It is.

"Q. After you had dissected around the tooth, what did you do? A. I then attempted to dislodge the tooth again.

"Q. With a forcep? A. I don't remember whether I used a forcep or an exolever.

"Q. What is an exolever? A. An exolever is an instrument with a handle and a point resembling a pen point. * * *

"Q. To go back to this extraction, now, after you had dissected with the drill around this tooth, how did you proceed then? A. I attempted to

dislodge the tooth again, and, finding that it was still firm, I did more dissecting, and continued in that manner until we had dissected down to practically the end of the root.

"Q. Then what did you do? A. Then I removed the tooth, with the exception of the tips.

"Q. And the tips broke off, did they? A. Yes.

"Q. Those are the tips that you have shown here on Exhibit 3? A. Yes, sir.

"Q. At the time you removed the tooth and the tips were still in the socket, had the jaw broken? A. It had not.

"Q. What were you doing at the time the jaw broke? A. I was loosing up or removing these tips. * * *

"Q. What is the fact as to whether or not her jawbone is as thick or heavy as the normal? A. This tooth practically involved the entire jaw; there was very little bone left around the tooth.

"Q. That is, the bottom of the tooth socket was practically—. A. (interrupting)—at the lower margin of the lower maxillary bone. * * *

"Q. How did you dissect it away? A. Most that was dissected in this tooth was dissected by a burr or a drill.

"Q. Did you start on the top of the jawbone and drill alongside of the tooth? A. Yes, sir.

"Q. How large a drill did you have? A. Just a small drill; the mark there in the tooth will show about the size of the drill that was used.

"Q. Did you drill away the full width of the tooth? A. Yes, sir.

"Q. You say that tooth is about how thick? A. About—

"Q.  A quarter of an inch?  A. Oh, no; I would say probably three-sixteenths.

"Q.  Did you drill down along the side of the jaw a piece out, three-sixteenths inch wide?  A. Yes, sir."

It will be noticed from this testimony that Dr. Francis removed a portion of the jawbone surrounding the tooth to the extent of one or more strips three-sixteenths of an inch wide, and that this was continued to the bottom of the tooth socket, which practically extended to the lower margin of the jaw.  This unerupted tooth, situated in the lower jaw, appears to have grown downward instead of upward through the gum, so that, according to the testimony of Dr. Francis, the process of removing the bone surrounding the tooth was continued until he had proceeded nearly through the jawbone.

With this testimony, and that coming from other witnesses, we cannot say that the general verdict for the plaintiff is clearly and manifestly against the weight of the evidence, nor can we accede to the contention that such a verdict could not be rendered, unless supported by expert testimony.

The contention of Mrs. Brooks that this bicuspid tooth was extracted without her consent first appears in the case in the third amended petition filed August 17, 1925, and it is strenuously insisted by counsel for the defendant that this portion of the case is in reality an action to recover damages for assault and battery, and not one for malpractice. Pursuing this theory, counsel urged the trial court to permit an amendment to the answer setting up the one-year statute of limitations.  The trial court

refused to grant such leave, and this is assigned as error. The case, as originally brought, was to recover damages for claimed malpractice, and the amendment in which the allegations are set forth, to the effect that the extraction of the bicuspid tooth was without the consent of Mrs. Brooks, was not a separate cause of action, but a mere incident of the malpractice case, and the case still remained as it was in the beginning, an action to recover damages for malpractice. The trial court therefore committed no error in refusing to allow the plea of the statute of limitations.

The operation involving the extraction of teeth was performed on September 18, 1922, and there is evidence that the relation of doctor and patient continued between the parties for some time thereafter, and the original petition was filed on September 1, 1923.

The charge of the court appears to be a careful and accurate statement of the law on the questions involved. At its conclusion the defendant asked the court to charge the jury, in substance, that the fact that plaintiff's jaw was broken by the defendant in the extraction of the second bicuspid is not the slightest evidence that the defendant was negligent. We think this was sufficiently covered in the general charge, in which the court said to the jury more than once that the mere fact that Mrs. Brooks suffered damage and injury is not of itself alone proof of negligence upon the part of the defendant. Indeed, it is not claimed that the doctrine of *res ipsa loquitur* applies.

Neither was the trial court in error in refusing request No. 2, asked after argument, to the effect

that the condition of plaintiff's jawbone at the time of the trial, or when the treatment ceased, could not be considered as any evidence of negligence.

Newly discovered evidence is assigned as a ground for reversing the judgment. We have examined the affidavits offered in support of the motion for new trial, but the evidence offered therein appears to be cumulative only, and would not justify the granting of a new trial. Moreover, no bill of exceptions appears to have been taken showing what evidence was introduced on the hearing of the motion for a new trial, and the certificate to the bill of exceptions shows only that it contains all the evidence given on the trial of the case, and does not show that it contains all of the evidence, or any of the evidence, given on the hearing of the motion for a new trial. And the affidavits introduced relating to newly discovered evidence are not made a part of the bill of exceptions.

The court is fully satisfied that the verdict of the jury for $12,500 in this case is not too large. The sensory nerve passing along the roots of this tooth was severed, thereby depriving the patient of the sense of feeling on that side of her mouth. The evidence discloses that Mrs. Brooks, who was a young woman of about 26 years of age at the time of the operation, is unable to open her mouth further than the thickness of an ordinary lead pencil, and that the jawbone as reset is not a very useful implement in the mastication of food, being partially misplaced, so that her ability to bite her food is partly destroyed.

We have been greatly aided in this case by the

arguments and briefs of counsel.  After a careful examination of all the alleged errors, we find none justifying a reversal of the judgment.

*Judgment affirmed.*

CULBERT and WILLIAMS, JJ., concur.