IN RE ESTATE OF CZAR C. JOHNSON.
MARY ERMA DOUGLAS, APPELLEE, v. LENA JOHNSON, ADMINISTRATRIX, APPELLANT.
16 N. W. 2d 504

FILED NOVEMBER 24, 1944. No. 31686.

*Peterson & Devoe, Kennedy, Holland, DeLacy & Svoboda* and *Lester L. Dunn,* for appellant.

*Max Kier, contra.*

Heard· before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

This is an action for malpractice. It was tried to a jury in the district court and resulted in a verdict for the plaintiff. Defendant appeals. We reverse the judgment of the district court and remand the case.

The matter was originally filed as a claim, in the form of a petition, against the estate of Dr. Czar C. Johnson, deceased. Objections were filed. The claim was allowed in the sum of $1,800. The administratrix appealed.

A petition was filed in the district court, wherein plaintiff alleged that Dr. Johnson, therein called the defendant, was a physician and surgeon engaged in the practice of his profession in Lincoln; that on and prior to March 2, 1938, plaintiff was under the care of her family physician, who diagnosed her ailment as "tumor or abscess of the uterus"; that plaintiff was in St. Elizabeth's Hospital in Lincoln, and there on or about March 1, or 2, defendant was called into consultation; that he spent ten or fifteen minutes in examination and said: "Oh yes, I know an abscess"; that, the relation of physician and surgeon upon the part of the defendant to plaintiff "came about" and it was agreed that defendant should operate upon the plaintiff to remove said tumor or abscess; that he did so in said hospital on March 2, and without her knowledge or consent removed her appendix and "disregarding the tumor or abscess then present in plaintiff's body, failed and neglected to remove said tumor abscess"; that thereby plaintiff was caused to have a second operation with its resulting risk, pain, suffering and loss of time from work, "and in connection with said operation performed by defendant, to suffer humiliation affecting her health," all as a result of his negligence.

Plaintiff further alleged that in connection with the diagnosis and the operation performed, the defendant negligently failed and neglected to use and exercise the reasonable and ordinary care, skill and diligence that physicians and surgeons in the same line of practice in Lincoln and vicinity ordinarily exercise in that "(a) Defendant stated prior to the operation that he knew there was an abscess and during the operation failed and neglected to remove the abscess. (b) During the operation, and without the previous consent and without the knowledge of the plaintiff, the defendant removed her appendix. (c) During said operation defendant examined and handled the uterus and saw, or by the exercise of ordinary care and skill would have ascertained the condition of the uterus as it was, affected with said tumor or abscess. (d) During said operation and examination of the plaintiff, defendant, by the exercise of ordinary care and skill aforesaid, knew or would have ascertained the presence of said tumor or abscess as it was then in plaintiff's body, and would have removed same. (e) Immediately prior to said operation, and as a part of the diagnosis of plaintiff's case and physical condition, defendant knew, or by the exercise of ordinary care and skill aforesaid would have ascertained that plaintiff was then an unmarried woman, that her menses were regular, and that she was not pregnant, but defendant carelessly, negligently, wrongfully and improperly disregarded, or failed to ascertain such facts, and during and after said operation diagnosed plaintiff's condition as being pregnancy, four months or more advanced, which diagnosis was false. (f) Notwithstanding said false diagnosis and finding of pregnancy, and disregarding the fact that plaintiff was unmarried and was the patient of defendant, the defendant falsely, negligently, wrongfully and improperly stated to other persons than the plaintiff that plaintiff was pregnant as aforesaid, and also suggested that plaintiff's brother-in-law so advise plaintiff's sister and her parents, which was done, and because of the said false statement that plaintiff was pregnant, so made to her relatives and

others, plaintiff was greatly disturbed and distressed, and her physical and mental suffering thereby greatly enhanced and prolonged and her recovery retarded and her general health affected."

This last or sixth charge of negligence, on defendant's motion, was stricken from the petition by the trial court.

Plaintiff further alleged that because of the failure to remove said tumor or abscess and the carelessness and negligence of the defendant, as aforesaid, plaintiff suffered pain of body and mind, injury and damage, and was compelled to have a subsequent operation with the attendant risk, pain and expense, all to plaintiff's material damage as detailed in the petition.

Defendant by answer admitted that Dr. Johnson was a physician and surgeon as alleged; that he performed an operation on the plaintiff and denied generally.

At the close of all the evidence, defendant moved for a directed verdict on the ground that the evidence was insufficient to sustain a verdict for plaintiff. The motion was overruled. This is the first assignment of error.

We review the evidence in the light of the rule that "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." *Moncrief v. Interstate Transit Lines,* 129 Neb. 168, 261 N. W. 163.

The plaintiff in this action formerly was married and the mother of one child. She was divorced in 1936, and for some time prior to the events here recited was living with her parents in Lincoln. She became ill and in December, 1937, consulted Dr. Deppen, who specialized in internal medicine and diagnosis, for hemorrhage from the uterus. Thereafter plaintiff remained under the care of Dr. Deppen. He finally diagnosed her trouble as a pelvic tumor

and decided that an operation was necessary. Plaintiff entered the hospital on February 28, 1938, understanding that she was to be operated upon for the tumor. Dr. Deppen did not do surgery. With plaintiff's approval, Dr. Deppen selected Dr. Johnson, a surgeon, to perform the operation, believing him to be well qualified to do so. Dr. Deppen thought the tumor should be removed. He told Dr. Johnson of his diagnosis and referred the case to him for operation for the pelvic tumor. Dr. Deppen did not expect Dr. Johnson to make a "real preliminary examination."

Plaintiff testified that Dr. Johnson called upon her in the hospital on March 1, 1938. Plaintiff had never seen him and did not know him when he entered the room. He removed the sheet covering her body, placed his hand upon her abdomen, put back the sheet and said: "We will operate for a tumor." The entire examination covered some two or three minutes. Plaintiff testified that he made no further examination or tests and took no history. However, the "summary" record, signed by Dr. Johnson and offered by plaintiff, under title of "Chief Complaint" showed the following: "Severe pain pelvis. Vaginal discharge. Occasionally blood in discharge. Unable to work. Constipated has had no regular normal flow for several months"; under "Onset and Course" the following: "Has had discharge for several months. Bartholin gland abscess opened and drained. Last two weeks increased pelvic pain with increased flow at periods and considerable discharge"; and under "Physical Examination" the following: "Abdomen: Upper tympanitic. Lower—rigid and painful in rt. lower quadrant. Rounded mass, mid line, reaching nearly the umbilicus. Considerable vaginal discharge. No Blood." The summary further shows an entry that plaintiff was married, divorced and the mother of *three* children. Where or how this information was gathered, or when Dr. Johnson made the entries, is not disclosed. The language quoted appears above Dr. Johnson's signature.

Dr. Johnson operated on the plaintiff the following morning. The "Record of the Operation" signed by Dr. Johnson

and offered by plaintiff, showed a "Preoperative" diagnosis of "Appendicitis sub-acute. Pregnancy? Pelvic adnexal disease". His "Postoperative Diagnosis" entry was "Ditto" written under "Pelvic adnexal disease", followed by "Pregnancy—4 mo. Appendicitis s.a." His "Gross Pathology" entry was "Pregnant uterus 4 mo. appendix—deeply injected adherent to rt. ovary region." It further shows "Operation" followed in writing by "Appendectomy." The "Summary" record, referred to above, showed under "Preliminary Diagnosis" the same entries above recited and under "Final Diagnosis" was recited "Appendix sub acute. Pregnancy 4 to 4½ mos. Pelvic adnexal dis." and following the printed words "Indications for Operation" was the entry "Appendix acute. Pelvic adnexal disease. Pregnancy (?) suspected."

Dr. Deppen was not present at the operation. Dr. Johnson removed the appendix. He did not remove the uterus. Shortly after the operation he advised plaintiff's sister that plaintiff was pregnant. Two weeks later he, in the presence of Dr. Deppen, advised the plaintiff that he thought her pregnant. This seems to be the last connection that Dr. Johnson had with the case.

Dr. Deppen on March 15 had a Friedman test made by the hospital staff. This test is the one ordinarily used to aid in determining pregnancy. There was a positive reaction, i. e., it indicated pregnancy. Plaintiff left the hospital at the end of three weeks.

Plaintiff had some irregularity in her menses, and excessive flow and pain when they occurred. She was flowing at the time of the operation on March 2.. Following the operation by Dr. Johnson, she continued to have pain and hemorrhages. On March 28 Dr. Deppen referred plaintiff to Dr. Harvey, a specialist in obstetrics and gynecology. He examined her over a period of about three weeks. He knew of the controversy that had arisen as to the cause of plaintiff's illness. He applied many tests. The Friedman test was made and the reaction was negative, i. e., a pregnancy was not indicated. Dr. Harvey, after a series of ex-

aminations, was not certain as to whether or not there was a tumor in the uterus or a fœtus. He thought it a pregnancy. He decided to wait and to apply other tests, i. e., a second Friedman, and also time, on the theory that if there were a pregnancy and a live fœtus, growth would show that fact. The uterus did not increase in size. The second Friedman test was also negative. The hemorrhages increased. Dr. Harvey decided an operation was necessary. When the abdomen was opened, the uterus on visual examination did not contract on stimulation, and was "paler" than usual for a pregnant uterus. This indicated a tumor. He was confident that if a pregnancy, it was not a live fœtus. He determined that in any event the removal of the uterus was necessary to save plaintiff's life and he completed the operation.

The pathologist who examined the uterus in the laboratory found that it had "the appearance and consistency of a pregnant uterus." The visible outside did not disclose the cause of the enlargement. It was an "inside" tumor. That was only revealed when the uterus was opened and the tumor on the inside definitely appeared. Dr. Harvey then knew positively for the first time that a pregnancy did not exist, and he was "relieved" to have his diagnosis confirmed. Thereafter plaintiff made a normal and complete recovery.

Due to Dr. Johnson's death, this case, of necessity, has been submitted without the benefit of his evidence, save the written record he made. It is clear that he was employed to perform an operation upon the plaintiff for a pelvic tumor. It was understood between the plaintiff and Dr. Johnson, on the evening before the operation, that such an operation was to be performed. Sometime before the operation, he reached the diagnosis of a subacute appendix, pelvic adnexal disease and a suspected pregnancy. The record does not show upon what he based that diagnosis, other than the entries hereinbefore set out. Neither does the record show where he received that information, except what he observed during the physical examination he gave the plain-

tiff on the evening before the operation. Dr. Deppen does not testify that he made any such diagnosis. It does not appear that Dr. Johnson advised Dr. Deppen of his diagnosis. He did not advise the plaintiff of it. Although defendant strenuously argues that Dr. Johnson operated for a pelvic tumor, it is noted that he did not make reference to "pelvic tumor" in either the pre- or postoperative diagnosis. He did not secure the consent of Dr. Deppen or the plaintiff to operate for a diseased appendix. There was no emergency requiring an immediate operation. He operated. He found and removed the diseased appendix. He found what he believed to be a pregnant uterus. He did not remove it. A second operation was necessary to remove the pelvic tumor.

The expert testimony is that where a diagnosis of pelvic tumor is made and there is a suspected pregnancy, as there was here, several tests should be made, and that question determined before an operation is undertaken, and a failure to do that would be carelessness and negligence on the part of the surgeon. The expert evidence further is that ordinarily preoperative tests can determine whether or not a pregnancy exists; that there being no emergency and where the surgeon disagrees with the referring physician, and does not know what tests the referring physician has made, nor what they showed, he should make the tests and examination, or have them made and know the results before operating. It further appears that neither the Friedman test, nor menstruation, or the lack of it, or other tests mentioned are infallible. They are tests, however, which the surgeon should have made and taken into consideration in arriving at his ultimate conclusion.

Under these circmustances, was defendant liable to the plaintiff for the resulting damage?

The defendant here contends that Dr. Johnson was employed to operate on plaintiff for a pelvic tumor; that he did so; that he had a right to rely upon Dr. Deppen's diagnosis,. did so, and accordingly is not liable, citing and relying upon the following: "But a physician is justified in

accepting as correct, and in acting upon, the diagnosis or preliminary examination of another physician of good repute who has sent the patient to him for a specified treatment, and is not negligent in failing to make an independent examination or diagnosis before administering such treatment." 41 Am. Jur. 209, sec. 92. The difficulty, however, is that the evidence does not support that contention. The evidence is sufficient to sustain a finding that Dr. Johnson did not accept Dr. Deppen's diagnosis. He made one of his own and acted upon it. The testimony of the experts is sufficient to sustain a finding that that diagnosis was not based upon commonly recognized and applied tests and examinations, and that he was negligent in operating before those tests and examinations had been made.

The rule is: "A patient is entitled to an ordinarily careful and thorough examination, such as the circumstances, the condition of the patient, and the physician's opportunities for examination will permit, and, while he does not insure the correctness of his diagnosis, a physician or surgeon is required to use reasonable skill and care in determining through diagnosis the condition of the patient and the nature of his ailment, and is liable for a failure, due to a want of the requisite skill or care, to diagnose correctly the nature of the ailment, with resulting injury or detriment to the patient." 48 C. J. 1125. See *Kimble v. Roeder,* 115 Neb. 589, 214 N. W. 1.

We have held that the "belief" which would excuse a surgeon from the consequences of an operation "must have been a well founded belief acquired in the exercise of due professional care and skill." *Johnson v. Winston,* 68 Neb. 425, 94 N. W. 607.

It has repeatedly been held that "there is a fundamental difference in malpractice cases between mere errors of judgment and negligence in previously collecting data essential to a proper conclusion, * * * thus, if he omits to inform himself, by proper examination, as to the facts and circumstances, and injury results, he is not relieved of liability for errors of judgment." 48 C. J. 1128. If injury

results therefrom, he is liable. Supplementing the cases cited in the text, see *Brewer v. Ring,* 177 N. C. 476, 99 S. E. 358; *Reed v. Church,* 175 Va. 284, 8 S. E. 2d 285; *Moulton v. Huckleberry,* 150 Or. 538, 46 Pac. 2d 589.

We have said: "Malpractice may consist in a lack of skill or care in making the diagnosis as well as in the treatment of the ailment." *Cook v. Moats,* 121 Neb. 769, 238 N. W. 529, 78 A. L. R. 694.

The language of the court in *Fortner v. Koch,* 272 Mich. 273, 261 N. W. 762, is as follows: "It is the duty of a physician or surgeon in diagnosing a case to use due diligence in ascertaining all available facts and collecting data essential to a proper diagnosis. The instant case, not being an emergency and the defendant not having used such diligence in availing himself of various methods of diagnosis for discovering the nature of the ailment as are practiced by physicians and surgeons of skill and learning in the community in which he practiced, he must be held liable for the damages due to his negligence."

The case of *Pilgrim v. Landham,* 63 Ga. App. 451, 11 S. E. 2d 420, principally relied on by the defendant here, is not *contra* to the above rules. There it was held that the expert surgeon had "the right to rely on the diagnosis of the family physician, and, *in the absence of anything warranting a contrary conclusion,* to perform the operation" and "Where the expert tells the patient in effect that he was relying on the family doctor's diagnosis that she had a tumor, and that he was going to give her treatment accordingly, the mere fact that the expert might have given the patient a slight examination from the outside, by feeling the stomach or abdomen and noticing the enlargement of the same, *and where there was nothing appearing to contradict the family physician's diagnosis,* and the slight examination of the expert rather confirmed the family physician's opinion than otherwise, the expert was justified in relying on the judgment of the family doctor." (Emphasis supplied.) Here it is obvious that Dr. Johnson did discover symptoms that contradicted Dr. Deppen's diagnosis.

Without further discussing the authorities, we think the following rules are amply sustained by reason and the adjudicated cases.

Where a patient's physician informs a surgeon of the diagnosis which the physician has made, and with the authority of the patient employs the surgeon to perform an operation which the physician deems advisable or necessary, the surgeon may rely upon the diagnosis of the physician and is not required to make an independent diagnosis before operating, in the absence of information or conditions which would put the surgeon upon inquiry as to the correctness of the physician's diagnosis and the advisability or necessity for the operation.

Where, under the above conditions of employment, the surgeon, relying wholly upon the physician's diagnosis, operates, and during the course thereof discovers facts or conditions which suggest a reasonable basis for a different conclusion from that arrived at by the physician which, if true, would make the proposed operation inadvisable or unnecessary, and there exists no emergency requiring him to proceed, the surgeon is not negligent if he refrains from completing the operation until a further proper diagnosis based upon the newly dicovered facts or conditions is made, and a proper course of action based thereon is determined.

Likewise, where, under the above conditions of employment, and before performing the operation, the surgeon discovers facts or conditions which appear to contradict the physician's diagnosis, or which cause the surgeon to question the correctness of the physician's diagnosis or to reach a different diagnosis, with the result that a different or no operative treatment is indicated, and there is no emergency, and the surgeon operates without making an additional and proper diagnosis to determine the questions presented and the action to be taken, the surgeon is negligent and liable to respond in damages for such injury and detriment to the patient as proximately follows.

The trial court did not err in refusing to direct a verdict for the defendant.

Defendant's assignment No. 2 goes to the following situation. It will be remembered that paragraph (f) of plaintiff's allegations was striken from the petition. In her general allegations, plaintiff had alleged that "in connection with said operation" plaintiff had been caused "to suffer humiliation affecting her health." The trial court in his instruction No. 1 told the jury of that allegation. The plaintiff testified, over the objection of the defendant, that two weeks after the operation she learned that Dr. Johnson claimed she was pregnant and that it embarrassed her and made her ill. The assignment does not go to the admission of the evidence, but to the instruction. The trial court at the request of the defendant specifically instructed the jury that they should allow the plaintiff nothing for any embarrassment or mental suffering, or any effect on her health resulting from any statements Dr. Johnson may have made about his diagnosis of pregnancy. We do not find that prejudicial error occurred in the matter about which complaint is made.

Assignment No. 3. The trial court in instruction No. 3 instructed the jury in part that before the plaintiff could recover, she must establish by a preponderance of the evidence that Dr. Johnson was negligent "in some particular as alleged in the petition." In instruction No. 1, the court repeated the allegation that "Defendant stated prior to the operation that he knew there was an abscess and during the operation failed and neglected to remove the abscess." It is the contention that there was no abscess and that the trial court submitted an issue to the jury on which there was no evidence. In instruction No. 1 the court referred to the plaintiff's allegation that her family physician had diagnosed her ailment "as a tumor or abscess of the uterus." In the same instruction the court refers to the allegation of the failure of Dr. Johnson to remove "said tumor." At several other points in the instructions he refers to "tumor or abscess." Defendant does not assign the other references to abscess as error. Plaintiff at eight points in her petition refers to "tumor or abscess," twice to "tumor ab-

scess," and three times to "abscess." Defendant did not move to clarify the allegations. True, she had a tumor—but throughout the words are used interchangeably. The evidence relates to a tumor. We are unable to see how the jury were misled and accordingly, if error, it is held to be without prejudice.

Assignment No. 4. The trial court in his instruction No. 1 set out plaintiff's allegation of negligence that "During the operation, and without the previous consent and without the knowledge of the plaintiff, the defendant (Dr. Johnson) removed her appendix." In his instruction No. 3 he advised the jury of plaintiff's burden of proving that Dr. Johnson was "negligent in his treatment of the plaintiff in *some particular* as alleged in the petition," and that "If plaintiff has proved the above propositions by a preponderance of the evidence and that the *one or more* of them was the proximate cause of said damage to the plaintiff, then and in that case you will find for the plaintiff." (Emphasis supplied.) There is no evidence that plaintiff consented to the removal of her appendix or that it was done with her knowledge. The evidence is all to the contrary. The evidence of Dr. Deppen, however, is that Dr. Johnson, finding the condition of the appendix as he did, should have removed it, and it was right that he did. There is no evidence to the contrary. Moreover, there is no evidence that the removal of the appendix in any wise caused any of the damage for which plaintiff sought to recover. That issue should not have been submitted to the jury. There is no way by which it can be determined here what, if any, part of the verdict was given based upon the appendix removal issue. We deem the error to be prejudicial.

Assignment No. 5. In like manner the trial court submitted the allegation of negligence to the jury that "During said operation defendant (Dr. Johnson) examined and handled the uterus and saw, or by the exercise of ordinary care and skill would have ascertained the condition of the uterus as it was, affected with said tumor or abscess." We find no evidence that Dr. Johnson "handled the uterus."

Neither is there evidence that *after* he had exposed the uterus, he could "by the exercise of ordinary care and skill" have ascertained that the uterus was affected with a tumor. The test of stimulation that could then have been made with the uterus in place was admittedly inconclusive. The evidence of plaintiff's experts, however, was that to make a definite diagnosis after the uterus was exposed would have required that it be opened, as was done in the laboratory, and that that could not be done in place without grave danger to the plaintiff. When he had proceeded that far, Dr. Johnson was confronted with either removing a uterus which he believed contained a foetus, with the resulting death of the foetus if alive, and the sterility of the plaintiff, or leaving the uterus in place. He elected not to proceed. The expert witnesses of plaintiff do not indicate other than that he proceeded in the exercise of a proper professional judgment at that time. The case of *Kimble v. Roeder, supra,* relied upon by plaintiff here was one where an exploratory operation was properly made, and evidence of a failure to use ordinary care and skill in making a diagnosis *after* exposing a kidney, and in removing it before that diagnosis was made. The distinction is obvious. We are of the opinion that the trial court erred in submitting this instruction to the jury, and that it was prejudicial.

Assignment No. 6. In like manner the trial court submitted the allegation of negligence to the jury that "During said operation and examination of the plaintiff, defendant, by the exercise of ordinary care and skill aforesaid, knew or would have ascertained the presence of said tumor or abscess as it was then in plaintiff's body, and would have removed same." Defendant submits that this instruction is erroneous for the same reason as that discussed in assignment No. 5. We agree only in so far as it relates to "during said operation."

Assignment No. 7. This assignment is that the trial court erred in submitting ground (e) of plaintiff's allegations of negligence to the jury "on the theory that Dr. Johnson negligently failed before the operation to find out

that plaintiff was not pregnant." This matter has been discussed at length in considering the motion for a directed verdict, and need not be discussed here. It was not error.

Assignment No. 8. The trial court in instruction No. 2 "summarized" the plaintiff's claim as follows: "Plaintiff claims that the physician and surgeon was careless and negligent in advising an operation without sufficient examination and in performing said operation improperly, and that said negligence and carelessness was the direct and proximate cause of plaintiff's damages." Dr. Johnson did not advise an operation. He performed one and, according to the evidence, without sufficient examination and diagnosis. The instruction refers to the "physician and surgeon" who it is claimed "was careless and negligent in advising an operation." Dr. Deppen advised the operation. He was not a party to the action, nor is it claimed that he was negligent or careless. The effect of the instruction was to wipe out the specific recital of plaintiff's claims and to submit to the jury "to consider" an inaccurate and misleading summary. The instruction should not have been given and was in our opinion prejudicial to the defendant.

Assignments Nos. 9, 10 and 11. The defendant complains by assignment No. 9 that in instruction No. 3 the court undertook to set out the degree of care which Dr. Johnson was required to exercise and in doing so left out the element of care that physicians "in the same general line of practice" have and practice. However, in instruction No. 3½ the court said: "You are instructed that physicians and surgeons are required only to use that degree of skill and diligence which other physicians in the same general neighborhood and in the same school or same general line of practice ordinarily use, and if you find that plaintiff has failed to prove by a preponderance of the evidence that Dr. Johnson did not use that degree of skill and diligence, then your verdict must be for the defendant." This instruction is almost verbatim in accord with one requested by the defendant and contains the element which defendant asserts was missing in instruction No. 3. By

assignment No. 10 complaint is made that in instruction No. 3 Dr. Johnson was held to that degree of care that "reasonably" competent physicians and surgeons use and that the rule does not go that far. However, in instruction No. 3½, quoted above, he was held to that degree of care which "other" physicians use. By assignment No. 11, defendant complains that in instruction No. 4 the court again left out the element of "same general line of practice." The court did use the expression "and his school," which is used in instruction No. 3½ in the alternative for "same general line of practice," which instruction No. 3½, the defendant advises us, "is probably a correct statement of the law." Further complaint is made that in the last sentence of the instruction, the court said it would be negligence to fail "to exercise such ordinary knowledge, skill, care and judgment as reasonably might be expected from members of the same profession practicing in this locality." This overlooks the previous sentence that it was the physician's obligation to exercise that knowledge, etc., "ordinarily possessed and exercised by doctors of his profession and his school in the same locality in like cases and under like circumstances." There was no dispute in the evidence involving these niceties of distinction and expression. The rule, recently restated, is: "Where instructions are not inconsistent or contradictory but, considered together, correctly state the law, the judgment will not be reversed because one does not state the entire law on the subject, unless it appear that the jury were misled." *Schram v. Lowden*, 144 Neb. 851, 15 N. W. 2d 42. We find no prejudicial error in the instructions here discussed.

Assignment No. 12. The trial court gave instruction No. 5 as follows: "You are instructed that even if a physician or surgeon has used his best judgment in treating a patient, he is not relieved of a charge of negligence and carelessness against him when it appears that *such judgment as he possessed and used was not such judgment as is possessed and used by physicians and surgeons of ordinary learning, skill and ability practicing in the same commu-*

*nity* where it is alleged that the negligence and carelessness occurred, or in similar communities." The defendant objects to that part of the instruction which is emphasized. The argument is that Dr. Johnson should be relieved if his error was the result of an honest mistake where he used his best judgment, and it is asserted that "there is no expert testimony that the judgment of the ordinary physician or surgeon would have been contrary to that exercised by Dr. Johnson." On the contrary, as has been pointed out in our discussions of assignment No. 1, the testimony of the experts is that when a physician or surgeon suspects pregnancy in connection with a diagnosis of pelvic tumor, he should not operate until the established tests and examinations have been made to determine whether or not a pregnancy exists, and that he would be careless and negligent if he did not do so. This question has been fully discussed heretofore in this opinion. We see no merit in the assignment.

Assignment No. 13. In instruction No. 6 the court instructed the jury that the terms "careless and negligent" or "carelessness and negligence" do not imply a lack of skill or capacity "but simply a disregard of the ordinary prudence and care which one has a right to expect from persons holding themselves out as physicians and surgeons." It is argued that the "one has a right to expect" phrase leaves each juror to apply his own yardstick. The expert witnesses advised the jury as to what that yardstick was and as to the specific acts and failure to act that constituted carelessness and negligence on the part of Dr. Johnson. Taken in connection with the evidence and the other instructions, we find no prejudicial error in the instruction.

Assignment No. 14. By instruction No. 7 the court set out the elements of damage that they should allow if they found for the plaintiff. He said: "If the injuries impaired plaintiff's power to earn money, such a sum as will compensate her for such a period of time as she suffered loss of her earning power." Defendant contends that the court should have limited the time of her recovery for loss of earning

power to the period between the first and second operation. The evidence is that she was operated by Dr. Johnson on March 2; that she was continuously ill until operated by Dr. Harvey on April 16. Thereafter her recovery was normal and she returned to work in November. There is no evidence that her recovery was in any way retarded by the first operation. Under these circumstances the period of her convalescence is not chargeable to Dr. Johnson. His operation may have delayed the beginning of the period for not to exceed the weeks between the two operations, but it did not extend the running of the period. The jury may well have considered under this instruction that they had the right to allow damages for loss of earning power until her recovery was complete. Under the circumstances, we consider the trial court erred in not limiting the period as herein indicated.

Assignment No. 15. The defendant requested an instruction, the effect of which was to require the jury to find for the defendant, unless they found, among other things, that Dr. Johnson's decision not to remove the uterus after it was exposed was not "a proper one under the circumstances." From what has been said heretofore, it is obvious that the court did not err in refusing so to limit plaintiff's right of recovery.

Assignment No. 16. The defendant requested an instruction, which, among other things, would have advised the jury that "If you believe that the error was so gross as to be inconsistent with ordinary care and skill, still the plaintiff cannot recover, unless you further find that a surgeon using that degree of skill and diligence which other physicians in this community and in the same general line of practice ordinarily use would have determined that immediate removal of the tumor was necessary." Here the defendant again attempted to restrict plaintiff's basis of recovery. For the reasons heretofore given, the trial court did not err in refusing to give the requested instruction.

Assignment No. 17. Defendant requested an instruction that, among other things, would have denied plaintiff a re-

covery unless the jury found that, at the time of the operation, there was no "reasonable doubt" but that the uterus should be immediately removed. Obviously, such an instruction should not have been given.

Assignment No. 18. Defendant requested an instruction leading off with the proposition that "it conclusively appears that the mere failure of Dr. Johnson to diagnose a tumor and remove it in and of itself caused no damage" (we do not so read the evidence); that the alleged negligence "consisted of physical non-feasance," that is, the defendant "did no physical act which affected plaintiff's condition" (he performed a major abdominal operation); that "the negligence, if any, was the failure to diagnose and advise" (the negligence proved was the failure properly to diagnose before operating); and that it was not sufficient to show that another operation was made necessary, but that the plaintiff must go further and show such medical certainty as to the existence of the tumor at the time of the first operation that a surgeon possessed with the proper qualifications would have immediately removed the uterus. This instruction, as would the others requested, would have relieved Dr. Johnson of the liability that attached by reason of an operation based upon insufficient preoperative diagnosis. The court did not err in refusing to give the proposed instruction.

Assignment No. 19. Defendant offered an instruction which was "an effort on our part to cover the whole case in one instruction." It contained several propositions which we have heretofore discussed and held should not have been submitted to the jury. In addition, it contained an instruction that "the most that plaintiff can recover in this case in any event is reasonable compensation for such pain, suffering and expense as was occasioned by the second operation." In Assignment No. 14, the defendant says: "The only thing that plaintiff could recover for in this action (outside of pain and suffering, etc.), was delay. Her return to work was delayed to the extent of the period between her first operation and her second operation. Her

recovery for lost time should have been limited to a period of that length, * * * ." It is obvious that the instruction conflicts with defendant's own view as to the elements that enter into plaintiff's damages once a right of recovery is established. By combining several propositions of law in one instruction, defendant comes fairly within the rule that "Where one of several instructions asked by a party fails to correctly state the law, error can not be predicated upon an exception taken to the refusal of the court to give the instructions as a whole." *Strong v. Combs,* 68 Neb. 315, 94 N. W. 149.

For the reasons herein given, the judgment of the trial court is reversed, and the cause remanded for further proceedings.

REVERSED.