## No. 16,376.

### CADY *v.* FRASER.
(222 P. [2d] 422)

Decided July 24, 1950. Rehearing denied September 18, 1950.

Mr. EUGENE H. TEPLEY, for plaintiff in error.

Mr. PAUL M. CLARK, Mr. LAWRENCE M. WOOD, for defendant in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

THIS is an action against a physician and surgeon for damages for alleged malpractice. Plaintiff in his complaint alleges that he was treated by defendant for a fractured ankle; that in such treatment defendant failed to use proper care, and that he "refused to allow this

plaintiff to obtain other medical aid or assistance, although repeatedly requested to do so by this plaintiff." At the trial, the court granted a motion for dismissal for failure of proof. Of the three points specified here for reversal, two concern the sufficiency of the evidence to require submission of the case to the jury, and the third relates to the rejection of evidence.

It first is urged that "treatment after discharge and in spite of protest is malpractice similar to an assault and damaged is presumed." The substance of the testimony on that point is that defendant was employed, not by the plaintiff, but by the plaintiff's employer, or his insurer, for treatment of the fractured ankle; that sometime during his eighty-one day stay in the hospital, plaintiff told defendant that he wanted an orthopedic doctor, and defendant replied that he didn't need one and that the insurance company wouldn't stand for the expense; that thereafter plaintiff told defendant "to get off the case," but he refused, and continued with his treatment and care; that plaintiff had someone at the hospital call his employer to ask for the services of another physician and did not get one; that he then had his daughter call up "the state industrial bureau" and that as a result, Dr. Barnard, a bone and joint surgeon of twenty years' experience in that field, came and examined him, in consultation with defendant, and that thereafter plaintiff made no further attempt to obtain the services of another physician or to discharge defendant. There is no testimony that plaintiff at any time refused the ministrations of defendant or suffered them unknowingly. His own testimony discloses that he accepted such ministrations, reported to defendant the fact and locations of his pain, and that after his discharge from the hospital he voluntarily went to defendant's office for further examination, and has continued since his hospitalization to use an elastic stocking prescribed by him.

■■ This testimony tendered no issue of trespass for the jury. First, it is not embraced in the issues

pleaded. Negligence in treatment, as alleged in the complaint, and treatment without employment, present basically different claims. *Hershey v. Peake,* 115 Kan. 562, 223 Pac. 1113, and *Rolater v. Strain,* 39 Okla. 572, 137 Pac. 96. The one is based on. the existence of a contract and authority for service, and the other upon the lack of such contract or authority. The one is based on lack of care or skill in the performance of services contracted for, and the other on wrongful trespass on the person regardless of the skill or care employed. The assertion of one is a denial of the other. Both claims cannot exist at the same time. In the case before us the pleading of failure to use proper care necessarily implies authority to treat and negates trespass. While issues may properly be tried even when not pleaded, yet they must be deliberately presented and knowingly considered by the court. Counsel is not required to be on the alert to challenge every objectionable question or answer lest it be later made the basis of another claim than that intentionally and fairly tendered. Second, plaintiff's own testimony discloses beyond dispute his acceptance of, his acquiescence in, and his ratification of the services of defendant, notwithstanding instruction to "get off the case," and the expressed desire that his employer obtain another physician to treat him.

It next is urged that "defendant's failure to inform plaintiff that he had a broken and unhealed bone in need of further treatment was malpractice." The injury occurred in the summer of 1942. The trial was begun on the thirtieth day of September, 1948. Not surprisingly, defendant had no recollection of what he had told plaintiff as to the lack of union of the bone at that time. There is little, if any, conflict in the evidence. The substance of the testimony concerning this contention is that plaintiff suffered a Pott's fracture — a fracture of the internal malleolus—and that after the cast was put on an X ray disclosed the fractured bone in good position. Dr. Barnard, the only expert witness other than

defendant, testified from a second examination of plaintiff in March 1947 that: "the X ray shows very good position of the bone. There is, however, a line here which shouldn't be — this dark line — which indicates that there isn't bony union across. We call it a nonunion; but the position is very good. That is very good for any end result. The only thing is that this isn't united—this bone—and the X ray shows that. However, clinically, it is united; on examination it is united with gristle; there is gristle there, and that gristle keeps that bone in position; otherwise, it would slip from one side to the other." He further testified that the bone in its then condition performed its function of keeping the small bone of the ankle from slipping sidewise, and that, as to stability, "It isn't solid, on pressure, but I don't think he had much instability of that ankle. I couldn't slip the ankle around. There wasn't a normal range of motion in the ankle, but the bone wasn't slipping out of its normal place." Even though defendant may not have informed plaintiff as to nonunion of the bone at the time of his discharge from the hospital, there is no basis for claim of lack of skill or of negligent treatment. Where there is no evidence that further treatment was needed than that admittedly prescribed, or that there was any other reason for explaining to plaintiff a then existing condition of the bone, and no evidence that plaintiff suffered injury by lack of knowledge as to such condition, failure to inform the patient thereof is not malpractice.

It next is urged that, "the care and skill ordinarily possessed and exercised in Denver by the medical profession was to mechanically unite the broken bone where the ankle was not stable and which recognized procedure defendant abandoned." There is no evidence whatever in the record as to the existence or propriety of such standard of care or that the ankle was so unstable as to justify attempt at mechanical union. The only evidence as to this matter in the record is the testi-

mony of Dr. Barnard, who was asked the question, "In cases of this type, of Pott's fracture, where you fail to have bony union of the internal malleolus, is it not the usual standard of care employed in Denver to attempt further treatment after apposition has failed to cause that union?" He answered: "Well, what period of time? We usually wait a period of six months to a year, and then if there is no union and the ankle is unstable and that ankle slips over because that bone is not holding it there, then we attempt to put in a bone graft or a screw or something. However, if the foot is stable or is rigid and holds in position, it is not necessarily the usual method. I have let many cases go with nonunion where the ankle was perfectly strong, and I have even taken it out—you can take that piece out and you can still have a strong ankle, but I don't think it is necessary." And he testified later, as to plaintiff's condition, "If he were my patient, with a foot such as he had, and came to me for me to take care of, after looking at it, I would say, 'Now, I think you have a good foot. If you feel that it bothers you enough, if you want, I will do a bone graft, but I wouldn't recommend it. I don't think it would do you any good.'" Plaintiff's testimony as to the instability of his ankle was that it was very clumsy; that his occupation as a steam fitter required frequent heavy work, like setting boilers and radiators; that he has to work with a helper because he can't get around fast enough, and that the leg swells up during the afternoon and "seems to get awfully heavy and tired." That testimony in no way disputes, but rather confirms, the testimony of Dr. Barnard as to the extent of the instability of the ankle. The evidence not only fails to support, but positively disproves, plaintiff's contention.

▮ Finally it is urged that the court erred in refusing to permit plaintiff to testify to the finding of the Industrial Commission as to the extent of disability due to the fractured ankle. In view of the entire lack of evidence that such disability was the result of negligence

or improper treatment by defendant, the extent of disability was immaterial. Assuming otherwise, and assuming further, that the proferred testimony was to be introductory to an offer of the award of the Commission, such evidence was inadmissible for the reason that defendant was not a party or in privity with a party to that proceeding. *Nulman v. Cooper,* 120 Colo. 98, 207 P. (2d) 814. This rule applies to findings and awards of the Industrial Commission. *Mutual Benefit Health & Accident Ass'n v. Neale,* 43 Ariz. 532, 33 P. (2d) 604.

 Admittedly plaintiff suffered a serious and painful injury, and admittedly he has suffered continuing partial disability therefrom, but there is no evidence in the record disclosing incompetence or negligence by defendant in his treatment of the injury. In the absence of such evidence, there is no legal basis for claim against defendant, and the court properly entered the order of dismissal of the suit.

The judgment is affirmed.