No. 17,031.

MAERCKLEIN ET AL. *v.* SMITH.
(266 P. [2d] 1095)

Decided February 15, 1954.

Mr. PAUL M. CLARK, Mr. LAWRENCE M. WOOD, Mr. HORATIO S. RAMSEY, for plaintiff in error Maercklein.

Messrs. WOLVINGTON & WORMWOOD, for plaintiff in error Postma.

Mr. EARL J. HOWER, Mr. HAROLD H. HARRISON, for defendant in error.

Mr. HARRY S. SILVERSTEIN, JR., amicus curiae.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

PLAINTIFFS in error were defendants in the trial court where judgment was entered against them in a substantial amount. Both are physicians and surgeons regularly licensed to practice their profession in the State of Colorado and were so engaged at the time of the events hereinafter related.

In his complaint plaintiff alleged that on or about De-

cember 1, 1949, he consulted the defendant Maercklein who advised him that he was then in need of a circumcision; that plaintiff again consulted Maercklein (he testified that this was about two weeks prior to June 23, 1950) "and it was agreed that the circumcision should be proceeded with, and * * * Maercklein stated that he would attempt to arrange hospital facilities for the circumcision operation; that Plaintiff then and there employed said Defendant to perform a circumcision operation upon Plaintiff." He further alleged that on June 23, 1950, upon going to a stated hospital "for the purpose of having the circumcision performed, Defendants, * * * acting wholly and without the knowledge, permission or consent of the Plaintiff and without Plaintiff's authorization did then and there commit an unlawful battery upon the person of the Plaintiff by performing upon Plaintiff's person a surgical operation known as a Vasectomy which rendered the Plaintiff sterile," and that no circumcision was performed at that time; "That as a direct and proximate result of the battery and act of malpractice," plaintiff suffered in various ways enumerated, all to his damage.

After first disposing of various motions, including defendant's motion to dismiss, the case proceeded to trial before a jury. When the taking of evidence was concluded, defendants again interposed motions to dismiss and for directed verdict, which was overruled. The court then sustained plaintiff's motion that the jury be directed to return a verdict in favor of plaintiff on the question of liability of both defendants as a matter of law, leaving only to the jury the question of damages, which direction was later given by instruction.

First, it is contended on behalf of both defendants, that the case should have been, and should now be, ordered dismissed for the reason that it was not commenced within one year next after the cause of action accrued and is barred by section 2 of chapter 102, '35 C.S.A., being the limitation statute applicable to actions

for damages arising from assault and battery. It is argued that plaintiff himself labels his action as one for unlawful battery and that no negligence in medical treatment of the plaintiff by defendants is charged. To sustain this position defendants' counsel place considerable reliance upon our opinion in the case of *Cady v. Fraser,* 122 Colo. 252, 222 P. (2d) 422, and particularly upon the following: "Negligence in treatment, * * *, and treatment without employment, present basically different claims. * * * The one is based on the existence of a contract and authority for service, and the other upon the lack of such contract or authority. The one is based on lack of care or skill in the performance of services contracted for, and the other on wrongful trespass on the person regardless of the skill or care employed. The assertion of one is a denial of the other. Both claims cannot exist at the same time." Immediately following the foregoing quotation we further said in the Cady case: "In the case before us the pleading of failure to use proper care necessarily implies authority to treat and negates trespass."

Without analysis, it might readily be assumed that the Cady case is here controlling, but a careful comparison of the present case therewith discloses a wide difference. In the case now before us there is no question as to the employment of defendants by plaintiff. He specifically alleges in his complaint that defendant Maercklein was to render service unto plaintiff pursuant to definite contract and agreement. This case "is based on the existence of a contract and authority for service," while it was the contention in the Cady case that no such contract existed. In the Cady case the plaintiff, while pleading negligence by reason of lack of proper skill on the part of defendant, undertook to prove in support of his claim that defendant persisted in acting after his discharge, and without authority. In the instant case there is no contention concerning the professional skill of defendants, it being admitted that the operation they did

perform was expertly done; but it is contended that they violated the contract of employment in that the operation therein agreed to be done was not performed, while another, different and wholly unrelated operation, was completed. This, then, leaves open the question to be met by proof of whether defendants, or either of them, by failing to comply with the terms of a contract, through inadvertence, lack of proper attention, or otherwise, were careless of plaintiff's welfare, and negligent in their professional practice.

In actions of this nature the opinions of courts of last resort of the several jurisdictions are in conflict. The majority rule is that such an action is essentially one involving negligence and that the statute of limitation respecting negligence cases is properly applicable regardless of the form of action by which the liability is sought to be enforced. "And in still other jurisdictions it has been recognized that an action for malpractice is neither a purely tortious nor a contractual action, but a hybrid, for which a specific limitation should be prescribed by statute, as has been done in some states. And such a statute applies to any of the causes of action therein specified regardless of the form of action, whether it sounds in contract or in tort. It is the general rule that limitation statutes relating to assault, assault and battery, malicious injury, and fraud have no application to actions for malpractice based on negligence of a physician or surgeon." 41 American Jurisprudence, page 232, section 122.

It has been held that where there is a statute of limitation relating specifically to those engaged in the practice of the healing arts, such statute shall govern in all actions against physicians and surgeons growing out of their practice and regardless of the form thereof. *Barnhoff v. Aldridge,* 327 Mo. 767, 38 S.W. (2d) 1029, 1030, 1031, 74 A.L.R. 1252.

In Colorado we have such a statute, the pertinent portions of which are as follows: "No person shall be per-

mitted to maintain an action * * *, whether such action sound in tort or implied contract, to recover damages from any person licensed to practice medicine, * * * on account of the alleged negligence of such person in the practice of the profession for which he is licensed or on account of his failure to possess or exercise that degree of skill which he actually or impliedly represented, * * * unless such action be instituted within two years after such cause of .action accrued." Section 7, chapter 102, '35 C.S.A. It is to be noted that the statute applies to actions for negligence of any person covered thereby, (1) in the practice of .the profession for which he is licensed; (2) or on account of failure to possess or exercise due skill. With number 2, we are not here concerned. Were defendants negligent "in the practice of the profession" by failing to perform the contract allegedly agreed upon, while at the same time, through mistake, misunderstanding or inadvertence, performing an operation not authorized?

In *White v. Hirshfield,* 108 Okla. 263, 236 Pac. 406, 407, it was held: "Where a patient is under the care, treatment, and control of a physician, and an unnecessary operation is performed without the consent of such patient, the elements of technical assault and battery include malpractice and a violated duty upon the part of the physician to his patient." This doctrine has more recently been expanded, and in the case of *Physicians' and Dentists' Business Bureau v. Dray,* 8 Wash. (2d) 38, 111 P. (2d) 568, 569, that court laid down the following rule: "While an unauthorized operation is, in contemplation of law, an assault and battery, it also amounts to malpractice, *even though negligence is not charged."* (Emphasis supplied.) The Dray case, in 1951, was cited with approval and quoted from in *Bakewell v. Kahle,* 125 Mont. 89, 232 P. (2d) 127. An interesting and more general discussion of this subject may also be found in *McClees v. Cohen,* 158 Md. 60, 148 Atl. 124; *Burke v. Maryland,* 149 Minn. 481, 184 N.W. 32; *Francis*

*v. Brooks,* 24 Ohio App. 136, 156 N.E. 609; *Hershey v. Peake,* 115 Kan. 562, 223 Pac. 1113.

In view of the foregoing enunciated principles we are impelled to hold that the gist of the action is defendants' alleged wrongful and negligent act; not in lack of skill, but in that degree of care which, as practitioners, they owed to their patient in the practice of their profession. This view is further strengthened where, under our present reformed and generally liberalized practice, we look to the substance rather than to the form, in the trial of civil cases. It is not a question of whether plaintiff in his complaint alleged a cause of action for either one as between battery and negligence, but, are the allegations sufficient to support a claim for negligence? We believe they are. No error was committed by the trial court in refusing to hold that the action was limited by the one-year statute.

Was the trial court in error in directing a verdict in favor of the plaintiff on the question of liability of defendants, leaving only the element of damages for the jury to determine? The answer is yes. Certain facts are in dispute. Defendant Maercklein, when called for cross-examination, testified that he first treated plaintiff on September 23, 1949, at which time he gave him a sulfa salve for present use and recommended circumcision. He further testified that from that day forward he never again talked to plaintiff with reference to having the circumcision operation performed, and stated that all subsequent discussion, including arrangements for, and instructions relative to, the operation, were made by him with plaintiff's wife, mostly by telephone. Plaintiff testified that he first went to see defendant Maercklein around the first of December, 1949; that defendant then gave him a sulfa ointment for temporary relief and recommended circumcision; that he again talked with defendant Maercklein about two weeks prior to June 23, 1950, when he told him that the sulfa ointment had been consumed, and that he would like to have the op-

eration done as soon as possible. He admits, however, that he did not specify a circumcision operation, and that he just mentioned an operation. "Q. You just said the operation? A. Yes, I took it that he knew what I meant. I just thought that he knew when the sulfa cream had run out." He further stated that Mrs. Smith was with him on that occasion; that he made no further reference to the operation; that his wife did most of the talking, and that all arrangements for the operation were left to her and defendant Maercklein. Defendant Maercklein further testified that when plaintiff's wife called him to make definite plans for the operation he asked her what operation, whether circumcision or sterilization, to which he referred, because of Mrs. Smith's apparent difficulty in understanding what he meant, as the "tube-tying" operation, and that she replied that was the operation to be done.

It is undisputed that on June 23, 1950, plaintiff, then appearing at the designated hospital, was operated upon by the two defendants; that a vasectomy was performed, but no circumcision. It also is admitted that the operation was skillfully performed.

A study of this record impresses one with the stress throughout the trial placed upon the failure of defendants to procure signed written consents and authorization from plaintiff and his wife. This, defendants admitted. It is apparent that, after such admission, the burden of proof in the whole case was placed upon defendants. The trial court in passing upon plaintiff's motion said: "The Court is of the opinion that there is not any question to go to the jury except the question as to the amount of damages. There has not been any evidence to indicate that there was any acquiescence on the part of this plaintiff. He had no knowledge that the vasectomy was to be performed. So the testimony indicates there wasn't any consent obtained either directly or indirectly."

It is certain that plaintiff acquiesced to be a pa-

tient in some kind of an operation. He so alleged in his complaint. He admitted that he himself never made any final arrangements for the operation. How then, can he successfully claim to have definite assurance on behalf of defendant Maercklein that he was to be circumcised? Did he have no duty in this respect? If he consented to no operation at all, then clearly it is a case of assault and battery, which would be barred by the statute of limitations. But he pleads that he made a contract with defendant Maercklein. If this be true, the terms of the contract must be disclosed and proven. The burden of proof hereof rests upon plaintiff.

There is no law or statute requiring that signed written authorization be procured from a patient and his spouse preliminary to the performance of such an operation. There is no statute declaring it to be illegal to perform such an operation without first procuring such signed consent. An operation performed without such signature on a formal document is just as good and equally lawful as one where the signatures are procured. The whole matter, if performed pursuant to an agreement or contract, revolves around the question of what was the agreement? The business of getting signed authorization on a formal instrument is but a rule of professional custom, laudable in every respect, but it is not required by any law.

Plaintiff in the instant case had the burden of establishing two things: First, the contract; and second, negligence. Was the contract in the first instance sufficiently clear and explicit that to violate its provisions by performing an operation not thereby agreed upon, would constitute negligence on behalf of the defendants in the practice of their profession? On the other hand, was it so vague, indefinite, and uncertain that the defendants may be said to have acted in good faith and made an honest mistake, without negligence, on their part whatsoever? These were questions of fact to be determined by the jury. Certainly the record in this case fails to

disclose a situation where reasonable minds might not disagree.

Negligence in actions of this nature is no different than in other situations. It consists of doing something, which, under the circumstances, should not have been done, or in omitting to do that which should have been done. This rule definitely needs no citation of authorities, but that it applies in cases of this nature we refer to: *Sim v. Weeks,* 7 Cal. App. (2d) 28, 45 P. (2d) 350, 353; *Swanson v. Wasson,* 45 Idaho 309, 262 Pac. 147.

We have mentioned the fact that failure to obtain signatures to a formal authorization is not a rule of law. In a very recent case it was held that where the negligence alleged does not constitute a violation of a fixed rule of law, it is defined as a failure to exercise that degree of care, prudence and forethought, which an ordinarily careful and prudent person would exercise under the same or similar circumstances. *Arnold v. Gardiner Hill Timber Co.* (Oregon), 263 P. (2d) 403, 408.

It is urged on behalf of defendant Postma, that the trial court committed error in denying his motion for a directed verdict, and for the dismissal of the action against him. The fact is that defendant Postma acted as the surgeon during the operation. He was not previously acquainted with plaintiff and performed this service at the request of defendant Maercklein. Plaintiff testified that he had no objection whatsoever to defendant Postma performing the operation, his sole complaint concerning him being that he had performed the operation without plaintiff's consent, permission or authority.

In this respect the evidence is clear that, on the morning of the operation, Postma inquired of Maercklein if he had the written signed consents and authorizations of the patient and his wife; that defendant Maercklein assured him that he did have and would place the same in the hospital record, stating at the time that he unwittingly had left them at his office. With the assur-

ance of Maercklein that he had in his possession the written consents and authorizations of plaintiff and his wife for the vasectomy operation, that this was the operation intended that morning to be performed and which defendant Postma was instructed he was to perform on plaintiff, we are of the opinion that defendant Postma took every precaution that was reasonably required of him, and since these facts are all admitted, there is no element of negligence left in the case as to him, and he was entitled to a directed verdict. "Where a patient's physician informs a surgeon of the diagnosis which the physician has made, and with the authority of the patient employs the surgeon to perform an operation which the physician deems advisable or necessary, the surgeon may rely upon the diagnosis of the physician and is not required to make an independent diagnosis before operating, in the absence of information or conditions which would put the surgeon upon inquiry as to the correctness of the physician's diagnosis and the advisability or necessity for the operation." *In re Estate of Johnson,* 145 Neb. 333, 16 N.W. (2d) 504, 511. See, also, *Pilgrim v. Landham,* 63 Ga. App. 451, 11 S.E. (2d) 420, 422.

Other grounds relied upon for reversal may not occur on a retrial of this case and are of such nature that they need not herein be discussed.

The judgment of the trial court is reversed and the cause remanded with instructions to vacate the same; to dismiss the action as to the defendant Postma, and if the parties so desire, retry it as to defendant Maercklein in conformity with the views herein expressed.

Mr. Justice Holland concurs in the result.

Mr. Justice Bradfield dissents.

Mr. Justice Bradfield dissenting.

I approve the majority opinion for reversal and for direction of dismissal as to defendant, Postma. I must

respectfully dissent in its direction for retrial as to defendant, Maercklein. The majority opinion found plaintiff's evidence insufficient to sustain the alleged contract, also insufficient to sustain the alleged negligence. In my opinion plaintiff having failed to prove his vital allegations, the case should be dismissed for insufficient evidence. I find no grounds justifying a retrial of these issues.