No. 16,038.

People in the Interest of Nulman, a Minor.
Nulman v. Cooper.
(207 P. [2d] 814)

Decided May 23, 1949.

Mr. John J. Gibbons, for plaintiff in error.

Mr. Samuel H. Sterling, for defendant in error.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

In a dependency proceeding the defendant in error, Frances Cooper, who was petitioner in the trial court and who will be hereinafter so designated, charged plaintiff in error, respondent, with being the father of her seven months old son. Evidence was introduced from which it appears that petitioner and Joseph Cooper were married August 15, 1944, in Montgomery, Alabama. At that time the latter was in the United States Army Air Corps. Petitioner testified that they lived together approximately two months, and that she then left her husband because of his military assignments and returned to her home in Denver. She further testified that the next time she saw her husband was in January 1946, and that thereafter his army assignments kept him in another part of this country and that she did not see him again until March 1947. She also testified that she gave birth to the child involved in this

dependency proceeding February 7, 1947, and that respondent is the child's father. Counsel for petitioner also introduced in evidence, over objection of opposing counsel, a duly authenticated copy, with congressional certificate, of a portion of the testimony given by Joseph Cooper August 21, 1947, in an action for divorce brought by him against petitioner in a New York court, as a result of which proceeding he obtained a decree of divorce from petitioner. Such testimony, admitted in evidence in the instant case, concerned the fact of nonaccess to his wife between November 1945 and March 1947.

The jury returned a verdict finding that respondent was the father of the minor, Bennie, and the court entered judgment against him for the minor's support. Respondent brings the proceedings here for review, alleging, inter alia, that the court erred: 1. In allowing petitioner to testify as to nonaccess to her husband, and 2. In admitting the testimony of her husband as to nonaccess between November 1945 and March 1947 through the introduction of a transcript of a part of the record of divorce proceedings in the New York court between petitioner and her husband.

1.

In answer to the first point specified, we are of the opinion that the wife could testify as to nonaccess to her husband. Counsel for respondent relies upon a dictum statement of Lord Mansfield, that the wife should not be allowed to testify as to nonaccess to her husband in proceedings of this nature; also upon the fact that the majority of state courts passing on this point seem to have followed this Lord Mansfield doctrine. Counsel for the petitioner relies upon the position taken by Wigmore, that the testimony of the wife should be admissible in situations of this nature as in other proceedings.

It appears from our examination of the transcript of

record of the New York case that the husband, in the divorce proceedings in that state, was permitted to testify as to the fact of his nonaccess to his wife to establish the fact that the child born to her while married to him must have been illegitimate and that therefore she was guilty of adultery.

It seems to us that all of the reasons advanced for adopting the Lord Mansfield rule have been eliminated by these preceding circumstances. The child born to the mother has already been branded as illegitimate in the New York court, and a divorce granted on evidence of that fact. For us to say now that the wife should not be permitted to testify to the same nonaccess of her husband, which was the basis of the divorce case in New York, would be to hold that that evidence could be used against her in obtaining a divorce, but cannot be used for her in establishing the liability of the man, who she alleges is the father of her child, for its support. We have carefully studied the annotations on this subject in 60 A.L.R. 380, 68 A.L.R. 421, and 89 A.L.R. 911. We have not noted that the facts in any of the cases discussed therein are similar to those in this litigation. Here we have the case of a woman, who, after having been divorced in a proceeding in which the testimony of her husband as to nonaccess was admitted in evidence, is now seeking support for the child from the man she alleges to be its father by proffering the same fact of nonaccess to her former husband. Her status was changed from that of a married woman to an unmarried one through the introduction of evidence of nonaccess. It would seem that now she should be in a position to proceed as a single woman in a dependency action and, by using the same or similar evidence as to nonaccess that won the husband a divorce from her, establish the fact that the child was not her former husband's.

Accordingly, we follow and approve the ruling in *Commonwealth v. Kitchen*, 299 Mass. 7, 11 N.E. (2d) 483, where, after pointing out that there was a pre-

sumption of legitimacy of children born to a married woman, the Massachusetts court went on to say:

"It is, however, established in this Commonwealth that this presumption can be overcome only by proof that the husband of the mother was impotent—of which there is no evidence—or by proof that he had no access to her during the time when, according to the course of nature, he could be the father of the child. * * * This rule has not been changed by statute.

\* \* \*

"The judge could find legally that the presumption was overcome. The testimony of the mother of the child, the only witness to nonaccess, included testimony 'that she has not seen or held any communication with her husband and was and is unaware of his whereabouts subsequently to September 14, 1935, up to the date of the trial.' Her testimony warranted, at least, a finding of nonaccess after September 14, 1935—three hundred five days before the birth of the child. It appears in the record that the 'normal period of gestation is two hundred eighty days,' but there is nothing in the record to show the frequency or extent of possible variation from the normal period."

In the same case, the court said, at page 11: "The defendant also excepted specifically to the testimony of the mother, who, when asked 'Who is the father of this child?' replied 'The defendant, Joseph Kitchen.' This evidence was admissible for the purpose of identifying the defendant as the father of the child, if, on other and sufficient evidence, the presumption of legitimacy was overcome." See, also, *Lynch v. Rosenberger*, 121 Kan. 601, 249 Pac. 682, 60 A.L.R. 376.

## 2.

█ █ We are of the opinion, however, that the judgment of the trial court must be reversed because of

error committed in admitting the authenticated copy of a portion of the testimony given on the trial in the New York court, where the husband of petitioner was suing for divorce. It is argued by counsel for respondent that the record of the proceedings in that court, so introduced, was admissible under the full faith and credit clause of the United States Constitution, article IV, section 1. We do not agree. It appears that the matter authenticated was merely a portion of the husband's testimony bearing on the extent of the time of his nonaccess to his wife. The admission of this part of such record afforded petitioner an opportunity to present to the Colorado jury the testimony of a witness who could not be subjected to cross-examination by counsel for respondent. This was prejudicial error. It is doubly prejudicial in view of the fact that the application for divorce in the New York court apparently was not contested, and the husband in testifying there does not seem to have been subjected to cross-examination. It will be noted that the dates of nonaccess as fixed by the husband in his testimony before the New York court do not agree with those fixed by the wife in the Denver Juvenile court proceeding.

No case has been cited, and in our search we have found none, which would justify the introduction of such evidence under the full faith and credit clause of the Constitution. "It is the judgment that must be given full faith and credit." *Union National Bank of Wichita v. Lamb*, 337 U.S. 38 69 Sup. Ct. 911, 93 L. Ed. 888. The cases annotated under that clause all appear to relate to giving full faith and credit to the judgments and final decrees of courts of other states. Petitioner has means of obtaining the testimony of her former husband, either by his personal appearance in court or by deposition. By either of those methods the right to cross-examine by counsel for the opposing side would be preserved.

It may be argued that the husband's testimony, even if in proper form, would have been merely cumulative

and that its rejection in its present form should not invalidate the judgment in the instant case. We believe the subject falls into a more important category than that of merely cumulative evidence. It was the only important evidence on a principal point that was not presented by the parties involved in this proceeding. We cannot say that the jurors might not have relied upon it—since it would appear to be disinterested, for the purposes of this case—more than on the testimony of the parties themselves. Neither can we say it was not the combined testimony of both husband and wife relative to the existence of nonaccess that satisfied the jurors, where the testimony of the wife alone might not have convinced them. Under these circumstances, the admission of the transcript of the record of the New York divorce proceedings was prejudicial error.

The judgment is reversed and the cause remanded.