202 So.2d 125 (1967)
Daniel Cramer BROWN, a Minor, by His Father and Natural Guardian, W.D. Brown, and W.D. Brown, Individually, Appellants,
v.
Dorothy Young WOOD, As Executrix of the Estate of George O. Wood, Deceased, and Virgil R. Kelley, M.D., Appellees.
No. 6801.
District Court of Appeal of Florida, Second District.
September 6, 1967.
*126 George N. Meros of Meros & Wilkinson, St. Petersburg, for appellants.
Baya M. Harrison, Jr., and John T. Allen, Jr., of Mann, Harrison, Mann & Rowe, St. Petersburg, for appellee Wood.
Joseph W. Bradham, Jr., of Ramseur, Bradham, Lyle & Skipper, St. Petersburg, for appellee Kelley.
LILES, Chief Judge.
The appellant-plaintiffs, W.D. Brown and his minor son, Daniel Brown, appeal from summary final judgments issued in favor of appellee-defendants, Dorothy Young Wood, Executrix of the Estate of Dr. George Wood, deceased, and Dr. Virgil R. Kelley.
Daniel Brown suffered from a congenital defect known as hypospadia. In June, 1961, Daniel Brown's parents took him to the defendants for diagnosis and consultation, whereupon the defendants advised that surgery would be necessary. On June 28, 1961, July 11, 1961, September 14, 1961, and September 24, 1961, the defendants performed operations on the minor child.
On May 14, 1963, the plaintiffs filed suit against Doctors Wood and Kelley. Their *127 complaint, which specifically listed only the operations of June 28, 1961, July 11, 1961 and September 14, 1961, contained three counts and was based in substance on negligence in performance of the operations and breach of an oral contract.
Several amended complaints and many motions were subsequently filed in this cause, but only those pertinent to our decision will be discussed here. A suggestion of death was filed by the defendant Dorothy Wood on January 20, 1964, suggesting the death of Dr. George O. Wood on December 13, 1963. On January 30, 1964, the plaintiffs filed a petition for the appointment of an administrator for the Estate of George O. Wood. Subsequently, Dorothy Young Wood filed a motion for substitution of party, which the court granted, allowing Dorothy Young Wood, as Executrix of the Estate of George O. Wood, to substitute herself as party defendant. Later an amended complaint was filed, which was similar to prior complaints except that it listed the operation of September 24, 1961, and added Counts 4 and 5. These counts alleged that the operation of September 24, 1961, was performed without obtaining the informed consent of the child's parents.
The defendants filed motions for summary judgments as to Counts 4 and 5 based upon the defense of the two year statute of limitations for assault and battery, § 95.11 (6), Fla.Stats., F.S.A. The trial court granted their motions and dismissed Counts 4 and 5. Defendant Dorothy Young Wood, on August 30, 1965, filed a motion for summary judgment, raising as a defense the plaintiffs' failure to file a claim in the estate of the deceased defendant, Dr. George O. Wood. The trial court, on September 20, 1965, granted said motion and dismissed the remainder of plaintiffs' complaint against defendant Wood. The plaintiffs then took this appeal from the two summary judgments which dismissed their entire complaint against defendant Wood and from the summary judgment which dismissed Counts 4 and 5 of their complaint against defendant Kelley.
First it must be determined whether this court has jurisdiction to entertain an appeal from the summary judgments entered in favor of defendants Wood and Kelley dismissing Counts 4 and 5 of plaintiffs' amended complaint.
Wood, in seeking to challenge the jurisdiction of this court, claims that Counts 4 and 5 of plaintiffs' amended complaint were based on a different theory than Counts 1, 2 and 3 and that they constituted a separate cause of action. Therefore, claims defendant Wood, their dismissal by summary judgment was a final appealable order and the plaintiffs' failure to file a notice of appeal within the required 60 days divests this court of jurisdiction.
A recent decision of this court, Morse v. Hendry Corporation, Fla.App. 1965, 177 So.2d 31, is directly on point. In Morse the trial court dismissed plaintiffs' Counts 1 and 2, which were based on the theories of third party beneficiary and strict liability, but refused to dismiss a third count based on negligence. The plaintiffs attempted to appeal the dismissal, but this court held that since defendant was ordered to answer the third count, the dismissal of Counts 1 and 2 was an interlocutory order at law, not final, and therefore not appealable. Cf. McLean v. Plant Fruit Company, Fla.App. 1964, 167 So.2d 332; Doby v. Griffin, Fla.App. 1962, 144 So.2d 873.
For reasons discussed infra, we find that Counts 4 and 5 of plaintiffs' amended complaint do not state a separate cause of action but merely another theory of recovery. Accordingly, under the authority of Morse, it is clear that the trial court's dismissal of plaintiffs' Counts 4 and 5 was an interlocutory order, and since it did not relate to venue or jurisdiciton, was not appealable. See Fla. Const. Art. V § 5(3), F.S.A.; Fla.App. R. 4.2(a), 32 F.S.A. Therefore, as to defendant-appellee Wood, *128 plaintiffs' appeal is timely and this court has jurisdiction.
Against defendant Kelley, plaintiffs still have standing Counts 1, 2 and 3. Thus it is clear that as to defendant-appellee Kelley, plaintiffs are attempting to appeal an interlocutory order and this court lacks jurisdiction to entertain the appeal from the summary judgment entered in favor of defendant Kelley.
Following the death of Dr. Wood, and prior to issuance of the notice to creditors, the defendant Wood, as mentioned supra, moved to substitute herself as a defendant in this case and the trial court granted said motion. Later the defendant moved to dismiss plaintiffs' complaint under § 733.16, Fla.Stats., F.S.A., because no claim was filed within the statutory six month period. The trial court granted this motion. The appellants, in their first point on appeal, question the correctness of the trial court's granting of this motion.
The case of Kornblum v. Heflin, Fla.App. 1966, 183 So.2d 843, involved a similar fact situation except that in Kornblum the executrix substituted herself as defendant after filing notice to creditors. In Kornblum this court was concerned with an executrix who substituted herself, within the six-month time limit, as a party defendant to a suit that was originally brought against her husband before his death. We held that the executrix by her substitution had voluntarily submitted herself to the trial court's jurisdiction, and formal filing and service of the claim against the estate was unnecessary. The distinction between Kornblum and the instant case, as to the time of substitution, is immaterial. Therefore, we hold that defendant Wood voluntarily submitted herself to the trial court's jurisdiction and thereby made formal filing and service of the claim by plaintiffs unnecessary.
The appellants, in their second point on appeal, ask whether the trial court erred in refusing to apply the doctrine of relation back to plaintiffs' Counts 4 and 5, thereby finding said counts to be barred by § 95.11 (6), Fla.Stats., F.S.A.
The trial court held that plaintiffs' Counts 4 and 5, which alleged that the operation performed on September 24, 1961, was unauthorized, did not relate back, under Rule 1.15(c) of the Florida Rules of Civil Procedure (now FRCP 1.190), 30 F.S.A., to the filing of the original complaint and were barred, therefore, by the two year statute of limitations for assault and battery. The trial court stated that the relation back theory did not apply because the list of dates in the first two complaints did not include September 24, 1961. Furthermore, the trial court held that the various operations were different transactions, therefore an amendment referring to the operation of September 24, 1961, would not relate back to the other operations. We disagree and believe that the trial court was in error.
Rule 1.15(c) F.R.C.P., which is worded similarly to Federal Rule of Civil Procedure 15(c), reads as follows:
"Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading."
Professor Moore, in commenting on the federal counterpart of our Rule 1.15(c), wrote:
"* * * If the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged generally, or which changes the legal theory of the action will relate back even though the statute of limitations has run in the interim." 3 Moore, Federal Practice 852 (2d ed. 1953).
*129 Proof that Florida has adopted Professor Moore's interpretation is found in Keel v. Brown, Fla.App. 1964, 162 So.2d 321, 323, wherein his statement above is quoted. In the Keel case, suit was originally brought in equity alleging the existence of a partnership and praying for dissolution and an accounting. The cause was transferred to the law side of the court and plaintiff was granted leave to file an amended complaint. In his amended complaint plaintiff alleged substantially the same transaction claiming that defendant was liable for services rendered by the plaintiff. But the trial court found the claim to be barred by the statute of limitations and rendered judgment for the defendant. On appeal, this court held that Rule 1.15(c) operated to relate back the amended complaint at law to the date of the original complaint in chancery, and that the trial court had erred in ruling that the statute of limitations had barred plaintiff's claim. See Meltsner v. Aetna Casualty and Insurance Co., Fla.App. 1965, 177 So.2d 43; Gilbert v. Gilbert, Fal.App. 1966, 187 So.2d 49; United States v. Johnson, 288 F.2d 40 (5th CCA 1961).
As mentioned supra, the trial court, in its order granting summary judgment, stated that the relation back theory did not apply because the first two complaints did not include the date September 24, 1961. It is true that plaintiffs in their first two complaints did fail to list September 24, 1961, but the complaints do allege the negligent performance of a skin graft. This skin graft, apparently the only one attempted by defendants, was performed on September 24, 1961. So, although the date of the operation was not specifically listed, the defendants were forewarned that the operation would be in issue and did have knowledge of the general fact situation out of which plaintiffs' claim arose. This, we believe, is sufficient. See Barthel v. Stamm, 145 F.2d 487 (5th CCA 1944); Fowles v. Commercial Casualty Ins. Co., 59 F. Supp. 693 (E.D.Wash. 1945), reversed on other grounds, 154 F.2d 884 (9th CCA 1946).
The trial court, as its second reason for not applying the relation back doctrine, found that the operations were separate transactions thereby implying that Counts 4 and 5 constituted a separate cause of action. We cannot agree with that conclusion. The plaintiffs, in contracting with the defendants, sought the repair of their son's congenital defect. They were not seeking the performance of a certain number of operations. These operations were not separate occurrences for the purposes of Rule 1.15(c), but were all part of one transaction and performed in pursuance of one goal, the correction of the boy's congenital defect.
On the basis of the above discussion, we hold that the doctrine of relation back is properly applicable to plaintiffs' fourth and fifth counts and therefore said counts are not barred by the statute of limitations.
Plaintiffs, in their third and fourth points, ask this court whether an action based on a surgeon's failure to obtain the informed consent of a parent prior to an operation on the child can only be brought in assault and battery or whether said action may also be brought in negligence.
The trial court determined that plaintiffs' Counts 4 and 5 could only be brought in assault and battery and were thereby barred by the statute of limitations, § 95.11(6) Fla. Stats., F.S.A.
A reading of plaintiffs' Counts 4 and 5 discloses that plaintiffs allege a contract whereby defendants were to provide competent, safe, and proper medical care and that from this contract arose a duty to adequately inform the parents of the operation and to obtain their informed consent. The plaintiffs further assert a negligent breach of the doctors' duty to adequately inform the boy's parents, thereby depriving them of the competent, safe, and proper medical care to which they were entitled. Thus, their fourth and fifth counts *130 can reasonably be construed as sounding in negligence.
Therefore, we are left with the question whether, as a matter of law, the plaintiffs can bring their action only in assault and battery.
The appellees cite four Florida cases, Russell v. Harwick, Fla.App. 1964, 166 So.2d 904; Bowers v. Talmage, Fla.App. 1963, 159 So.2d 888; Zaretsky v. Jacobson, Fla.App. 1958, 99 So.2d 730; and Chambers v. Nottebaum, Fla.App. 1957, 96 So.2d 716, which they claim uphold the trial court's determination. A close reading of the Russell, Bowers, and Zaretsky cases will show that they do not deal with the issue at hand and do not support appellees' claim, but instead establish the proposition that the consent obtained prior to operation must be an informed one. The Chambers case involved an action alleging trespass to the person against a physician for injuries allegedly caused by the physician's administration of a spinal anesthetic contrary to the patient's express instructions. The question of whether the cause of action could be brought in negligence was apparently not raised by the plaintiff and was not in issue.[1]
From the cases cited by appellants and appellees and from extensive independent research, we conclude that no Florida court has previously been faced with the issue presently before us.
It is well established in Florida that in cases involving informed consent "the standard to be applied is whether, according to expert testimony, a reasonable medical practitioner in the community would make such a disclosure under the same or similar circumstances. * * *" Ditlow v. Kaplan, Fla.App. 1965, 181 So.2d 226, 228. See Visingardi v. Tirone, Fla.App. 1965, 178 So.2d 135, rev. on other grounds, Fla. 1966, 193 So.2d 601; Bowers v. Talmage, Fla. App. 1963, 159 So.2d 888. This standard closely resembles that used in the general malpractice cases. See McCoid, A Reappraisal of Liability for Unauthorized Medical Treatment, 41 Minn.L.Rev. 381, 382 (1957). It seems illogical to use a standard such as this in an action for the intentional tort of assault and battery.
In a recent case, Wilson v. Scott, 412 S.W.2d 299, 302 (Tex. 1967), the Texas Supreme Court said:
"* * * Regardless of what some earlier informed consent cases suggest, such an action need not be pleaded as one for assault and battery. The traditional elements of assault and battery, unlawful use of violence upon another and intent to injure, are absent in most malpractice cases based upon a physician's failure to make sufficient disclosure. * * *"
We can find no logical reason for treating the instant issue differently from the main body of malpractice law and we believe that the better rule is to allow a plaintiff to bring his action for failure of a doctor to secure informed consent prior to operation in either negligence or assault and battery.[2] Therefore, we find that the *131 trial court erred in refusing to allow plaintiffs to bring their action in negligence.
Reversed and remanded for disposition consistent with this opinion.
ALLEN and PIERCE, JJ., concur.
NOTES
[1] The court did say in dicta, however, that "the plaintiff's case was not one of malpractice but for trespass to the person. * * *" The court then quoted from an Alabama case, Donald v. Swann, 24 Ala.App. 463, 137 So. 178, cert. den., 223 Ala. 493, 137 So. 181 (1931), which said:

"* * * The distinction lies in the fundamental difference between an action for malpractice and an action for trespass to the person. Trespass to the person is an intentional act which is unlawful, while malpractice arises on account of negligence. * * *"
[2] See Manning v. Serrano, Fla. 1957, 97 So.2d 688, wherein the Court said the statutory period applicable to a malpractice suit depends upon whether the plaintiff states his claim for relief in contract or tort. For current authorities supporting the proposition that an action alleging a doctor's failure to secure informed consent prior to operation may be brought in negligence, see: Wilson v. Scott, 412 S.W.2d 299 (Tex. 1967); DiRosse v. Wein, 24 A.D.2d 510, 261 N.Y.S.2d 623 (1965); Aiken v. Clary, 396 S.W.2d 668 (Mo. 1965); Nantanson v. Kline, 186 Kan. 393, 350 P.2d 1093 (1960); Maercklein v. Smith, 129 Colo. 72, 266 P.2d 1095 (1954); McCoid, A Reappraisal of Liability for Unauthorized Medical Treatment, 41 Minn.L.Rev. 381 (1957); and see Shetter v. Rochelle, 2 Ariz. App. 358, 409 P.2d 74 (1965), modified on other grounds, 2 Ariz. App. 607, 411 P.2d 45 (1966), wherein the court distinguishes between actions brought in negligence and assault and battery.