LILES, Judge.
In 1948 appellee received a deed to Block 8 of Sylvan Dale Subdivision from certain parties, the purchase money being paid by her father, Stanley W. Boyda. Her ownership remained uninterrupted until the sale below. Her father was the owner of Blocks 9, 10 and 11. Prior to his death on April 3, 1964, appellee and her father contracted by written option agreement to sell these four blocks to a purchaser for $110,000, and received $1,000 as option deposit. The latter sum was paid by check made to Boyda alone. The agreement was prepared by purchaser’s attorney, now deceased, working with a real estate broker, John F. Roker, and was signed by appellee and her father. Roker was the only other party present at the signing. The agreement, which referred to “sellers” in the plural throughout, provided that upon the exercise of the option, a cash payment of $31,900, less the option payment, was to be made and a purchase money note and mortgage was to be executed in favor of Stanley W. Boyda, alone. Roker testified that appellee participated in the negotiations for the agreement but that her father did all the talking. Roker said Boyda “insisted that the note be made to him only.” The option was exercised by written notice given to appellee and her father. Stanley W. Boyda died shortly thereafter intestate. Although the probate court recognized it had no jurisdiction over Block 8 owned by appellee, appellee agreed to consummate the sale and place the net down payment in a separate account of the estate and await judicial disposition.
Neither appellants nor appellee were represented at the closing, although the appellee was present. The closing statement, prepared after decedent’s death by purchaser’s attorney, contained a purported breakdown of the purchase price. Ap-pellee’s father had given instructions to Roker as to how the closing statement was to be drawn and Roker relayed them to purchaser’s attorney. A $40,000 allocation to Block 8 and a $70,000 allocation to Blocks 9, 10 and 11; an allocation of expenses to the respective lots; and an allocation of state stamps, federal stamps, taxes, real estate commission and title insurance were included in those instructions. Roker thought the larger figure was placed on Block 8 because of an expressway coming through. The purchaser recalled no reason for the breakdown, and stated that it was not for his benefit.
The sale was consummated with the probate court’s approval, and the proceeds were made payable to the estate subject to the outcome of this action. An order provided that all the proceeds would be held subject to the circuit court’s determination of the action below, brought by appellee for declaration of an undivided tilths interest in the selling price of the four blocks. The circuit court found that appellee was the fee simple title holder of Block 8 and was therefore entitled to $40,000 of the proceeds of the sale of the property in accordance with the closing statement. This was held to entitle appellee to the following: (1) 4/n of the down payment and deposit of the sum of $18,678.38, less the part of the down payment she received in the sum of $350.00, which leaves her a net cash amount of $6,442.12; (2) 4/n of the purchase money mortgage in the principal sum of $78,100.00, of which her share is $28,400.00. This appeal ensued.
Appellants urge reversal of the judgment below for the following reasons: (1) appellee did not prove facts entitling her to relief in that (a) there was no proof of mistake- in the unambiguous portion of the contract appellee signed, and (b) there was no proof of an oral agreement; (2) there was no competent evidence to support the allocation of the proceeds demanded *300 by plaintiff and awarded by the trial court; (3) appellee’s claim is barred by the non-claim statute; (4) appellee’s claim is barred by laches; and (5) appellee held no equitable interest in Block 8, and held it in trust for her father.
Disposing first of appellants’ final two points on appeal, after examining the chronology of the events leadiñg to this litigation, we find none of the elements necessary for application, of the doctrine of laches to be present. Additionally, there is no evidence in the record sufficient to consider ownership of appellee’s property to be in her father prior to the sale under a resulting trust theory, and certainly there is no evidence in the record compelling reversal on this point.
We agree with appellants’ contention that there was no proof of mistake in the option agreement, which provided that a cash payment less the option payment and a purchase money note and mortgage was to be executed in favor of Stanley W. Boyda alone. Roker’s testimony of Boyda’s insistence as to this method and manner of payment buttresses the clear wording of the contract. However, this is not fatal in itself to the judgment of the trial court, for we are of the opinion that sufficient proof was introduced at trial to support a finding of a subsequent oral agreement dividing the proceeds of the sale between appellee and her father.
Although appellants sought to establish through evidence of short-term transfers of real estate between her father and his other children that he treated such property as his own, it is not disputed that appellee was the sole owner of the property for some sixteen years before the sale that spawned this litigation. While it is true that appellee’s father paid most of the taxes on the property, when considered in light of the long and close relationship between appellee, a widow, and her father, a widower, this is not unusual and certainly not fatal to appellee’s assertion of equitable and legal ownership, as pointed out above. This considerable period of continuous ownership, coupled with the division of the proceeds in the closing statement prepared at Boyda’s express orders, constitutes sufficient circumstantial evidence to support the judgment of the trial court under the allegation of an oral contract. This same reasoning is applicable to appellants’ contention that there was no substantial evidence to support the allocation of the proceeds made by the trial court. The trial judge was confronted with a difficult problem and his decision as to the allocation was well within the bounds of discretion allowed by the evidence.
Appellants present an interesting argument in urging reversal on the basis of a failure to comply with Fla.Stat. § 733.16, F.S.A., the non-claim statute. According to this theory, when appellee and her father entered into the option agreement with the buyer and when the option was accepted, they had only a naked legal interest in the property, for the doctrine of equitable conversion would transfer equitable ownership of the property to the buyer. Thus appellee has no independent property right upon which to base a claim to the proceeds. Since appellee’s claim to a portion of the proceeds is based on an oral contract with her father, now deceased, any claim under the contract must be made against his estate. Admittedly, no claim against the estate was filed within the six month period following publication of notice of creditors, and therefore, according to appellants’ theory, the judgment of the trial court must be reversed.
While initially impressive, this argument overlooks the applicability of Fla.Stat. § 733.16(1) (a), F.S.A., which reads as follows:
“[I]f suit upon any such claim or demand is filed and service of process *301 therein had upon such personal representative within six months from the time of the first publication of the notice to creditors, the claim or demand asserted by such suit shall not be impaired or affected by failure to file in the office of the county judge granting letters a claim or demand in manner and form as hereinabove provided, * * * ”
Appellee, who was the plaintiff below, was also the administratrix of the estate of her father, who died on April 3, 1964. Letters of administration were issued on April 23, 1964. When suit was filed on October 15, 1964, appellee was therefore in the position of plaintiff and defendant. Although both the complaint filed on October 15, 1964, and the amended complaint filed on October 25, 1965, asked for appointment of an administrator ad litem, one was not appointed until May 3, 1966. While the exact date of the first publication of the notice to creditors cannot be found in the record, it could not have come before the letters of administration were issued. Fla.Stat. § 733.15, F.S.A. Service of process presents no problem, as appellee filed this suit against herself, among others, in her capacity as administratrix. Thus the filing and service occurred within the six month period, and appellee has complied with the statute. For analogous holdings on the basis of this statute see Brown v. Wood, Fla.App.1967, 202 So.2d 125; Kornblum v. Heflin, Fla.App.1966, 183 So.2d 843.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.
HOBSON, C. J., and McNULTY, J., concur.