737 So.2d 1229 (1999)
ESTATE OF Mary Ann SHEARER, By and Through the Personal Representative, Dennis SHEARER, Appellant,
v.
AGENCY FOR HEALTH CARE ADMINISTRATION, et al., Appellees.
No. 98-2604.
District Court of Appeal of Florida, Fifth District.
July 30, 1999.
*1230 James L. Wilkes, II and Mary J. Perry of Wilkes and McHugh, P.A., Tampa, and Derek B. Alvarez of Curt Genders, P.A., Tampa, for Appellant.
Tae Kelley Bronner and Charles F. Ketchey, Jr. and Jeanne Z. McLean of Ketchey Horan, P.A., Tampa, for Appellees.
GOSHORN, J.
The Estate of Mary Ann Shearer, by and through the personal representative Dennis Shearer (hereinafter Shearer), appeals the order denying Shearer's petition to strike the Medicaid Estate Recovery Unit's (hereinafter Medicaid) amended claim for recovery of monies expended on behalf of Mary Ann Shearer. Shearer argues the amended claim was untimely filed and thus should have been stricken. We agree and reverse.
The following time line sets forth the pertinent events in chronological order.
March 18, 1996 Mary Ann Shearer, a Medicaid recipient,
 dies.
April 24, 1997 Dennis Shearer is appointed personal
 representative.
May 5, 1997 Parties agree that Notice of Administration
 is published this date,
 triggering the 3-month claims period
 under § 733.702.[1] The 3-month
 period expires August 5, 1997.
May 12, 1997 Medicaid timely files claim for $28,209.14.
 Claim states that amount
 is not liquidated and "is subject to
 being amended pursuant to Administrative
 Rule sec. 59G-5.090,"
 which rule requires Medicaid service
 providers to submit claims for
 reimbursement within 12 months of
 the death of the recipient. (The
 rule was repealed two months later,
 but the substance was carried over
 in the Provider Handbook).
May 22, 1997 Shearer files objection to this
 claim. Shearer does not dispute
 the timeliness of the May 12 claim.
August 5, 1997 Time period for filing creditors'
 claims expires.
August 7, 1997 Medicaid files amended claim seeking
 $108,088.55. Like the first
 claim, this one stated the claim was
 not liquidated and was subject to
 being amended pursuant to rule
 59G-5.090.
August 11, 1997 Shearer files a wrongful death civil
 suit against the nursing home
 where Mary Ann Shearer resided.
 The suit settled sometime after
 April 1998 for an undisclosed sum.
 This recovery is the sole asset of
 the estate.
August 21, 1997 Shearer files objection to amended
 claim.
June 1, 1998 Shearer petitions for order striking
 untimely filed amended claim.
*1231 Medicaid responded to the petition to strike its amended claim with the assertion that Shearer was always on notice that the original claim was not liquidated and that the amount claimed, $28,209.14, was subject to being amended.[2] It contended that the amendment simply clarified and finalized the actual amount of its claim against the decedent's estate. Because the amendment did not change the nature of the controversy, amendment was properly allowed, Medicaid concluded. The trial court agreed that the amendment was timely and denied Shearer's petition. Per our discussion seriatim, we have determined that Shearer's petition should have been granted.
By statute, Mary Ann Shearer's estate became liable for the debt created when Mary Ann Shearer accepted Medicaid benefits. § 414.28(1), Fla. Stat. (1997). Medicaid had three months after the publication of the notice of administration of her estate to timely file a claim against the estate to recoup the monies expended on her behalf. § 733.702(1), Fla. Stat. (1997). Any claim not timely filed is barred unless the probate court grants an extension upon the grounds of fraud, estoppel or insufficient notice of the claims period. § 733.702(3), Fla. Stat. (1997). There is no contention of the existence of any legal excuse for the late filing in this case.
Shearer argues on appeal that the amendment seeks reimbursement for services not included in the original claim and that the amendment thus represents an impermissible new, and untimely filed, claim. At the time Medicaid filed its original claim, Medicaid already possessed all the information necessary to file a claim for the total amount because no new claims for reimbursement could be filed by Medicaid providers. Rule 59G-5.090 required Medicaid providers to submit their claims to Medicaid within 12 months after the date of the Medicaid recipient's death. Mary Ann Shearer died March 18, 1996; accordingly, providers had until March 18, 1997 to file their claims. In reality, Medicaid had from March 18, 1997, the closing date for acceptance of providers' claims, to August 5, 1997 (a Tuesday), the date the three-month claims period ended, to calculate the total amount it was going to seek from the estatewhich amount it had in its records the entire time. The fact that it is "tedious" for Medicaid to arrive at the total amount due is not Shearer's problem, Shearer asserts. We agree.
While the original claim did purport to alert Shearer that the claim was not liquidated and referenced the rule that permitted providers twelve months post-death to file their claims with Medicaid, the fact is the amount due was liquidated. Medicaid possessed records showing the services rendered to Mary Ann Shearer and amounts claimed by those Medicaid providers, and the time for those providers to seek reimbursement from Medicaid had ended. Further, while the aggregate of the services rendered to Mary Ann Shearer during her life may constitute a single debt under the umbrella of "public assistance," Medicaid has the burden of proving each service challenged by Shearer. Proof of each service requires that new facts be introduced to support those amounts.
Amendment of a claim outside the claims period is permissible where the amendment cures a defect of form, but is impermissible if it changes the nature or amount of the claim.[3]See Black v. Walker, 140 Fla. 48, 191 So. 25 (1939) (affirming allowance of amendment filed outside the filing period where amendment "was for the same amount and purpose as the original *1232 claim"); In re Grist's Estate, 83 So.2d 860 (Fla.1955) (amendment permissible because no additional facts had to be proved to support the claim and the parties in interest and essential elements of the claim remained the same). Here, because the amounts claimed in the amendment were for separate and distinct services requiring different proofs, untimely amendment should not have been permitted.[4]
REVERSED.
W. SHARP, and GRIFFIN JJ., concur.
NOTES
[1] Subsection 733.702(1) provides in pertinent part:

(1) If not barred by s. 733.710, no claim or demand against the decedent's estate that arose before the death of the decedent, including claims of the state and any of its subdivisions, whether due or not, direct or contingent, or liquidated or unliquidated; no claim for funeral or burial expenses; no claim for personal property in the possession of the personal representative; and no claim for damages, including, but not limited to, an action founded on fraud or another wrongful act or omission of the decedent, is binding on the estate, on the personal representative, or on any beneficiary unless filed within the later of 3 months after the time of the first publication of the notice of administration or, as to any creditor required to be served with a copy of the notice of administration, 30 days after the date of service of such copy of the notice on the creditor, even though the personal representative has recognized the claim or demand by paying a part of it or interest on it or otherwise.
(Emphasis added). Subsection (3) states that any claim not timely filed is barred even if no objection is filed, unless the court grants an extension upon the grounds of fraud, estoppel or insufficient notice of the claims period.
[2] Medicaid blames its belated amendment on the fact that its original claim was based on computer records which covered only the last 18 months of the decedent's life; for the remainder of its claim, Medicaid had to go through the tedious process of manually researching microfiche.
[3] Section 733.704 provides, "If a bona fide attempt to file a claim is made by a creditor but the claim is defective as to form, the court may permit the amendment of the claim at any time." Changing the amount claimed to seek reimbursement for additional services rendered the recipient is not a defect in form, but of substance.
[4] The cases on which Medicaid relies, Bell v. Harris, 381 So.2d 1167 (Fla. 1st DCA), pet. for rev. denied, 392 So.2d 1371 (Fla.1980) and Farr v. Clement, 202 So.2d 613 (Fla. 2d DCA 1967), are distinguishable or, we conclude in the case of Farr, possibly wrongly decided. In Bell, the statement of claim was challenged by the personal representative because it did not set out the amount claimed in the wrongful death action. A claim for wrongful death damages is, by its very nature, unliquidated. In fact, a plaintiff in a wrongful death suit is prohibited by section 768.042 from stating in the complaint the amount of general damages sought. In the instant case, although Medicaid's statement of claim states that the amount is unliquidated, that was not factual. The amount was within Medicaid's imputed knowledge as all claims for reimbursement had been made to Medicaid and Medicaid had the facts within its files as to the total expended on behalf of Mary Ann Shearer.

In Farr, the claimant, a doctor, was permitted to amend his claim outside the period for filing claims by affixing an acknowledgment and by increasing the amount claimed. The appellate court affirmed, reasoning that because both the original and amended claims stated a cause of action for money owing, "the variance in amount does not create any new, different, or inconsistent issues." Farr, 202 So.2d at 615. Farr is not distinguishable given the facts provided, but it appears it may have been incorrectly decided. If the amendment to the amount claimed stemmed, for example, from an addition error in adding what was owed for the service rendered giving rise to the initial claim, then amendment would be a matter of correction of a mathematical or clerical error, and hence permissible. However, if the increased amount arose from an attempt by the doctor to claim payment for services not included in the timely claim, then the amendment should have been denied under Black.