WALLACE, Judge.
 

 Two creditors of a decedent filed a statement of claim in an estate administration proceeding on behalf of themselves and a class of persons similarly situated. The personal representative of the estate moved to strike the claim to the extent that it attempted to assert claims on behalf of persons other than the claimants. After a hearing, the circuit court ruled that the filing of the claim was unnecessary because a federal action asserting the class claim was pending against the decedent at the time of his death and because the personal representative of the estate was promptly substituted as a party defendant in the federal action. In addition, the circuit court ruled that a class claim could be filed in an estate administration proceeding. In accordance with these rulings, the circuit court denied the motion to strike the class claim and granted the claimants six months within which to amend their statement of claim to identify the other members of the class by name and address. The personal representative appealed the circuit court’s order.
 

 We hold that the pendency of the federal class action at the death of the decedent and the prompt substitution of the personal representative in the pending federal action did not make the filing of a claim unnecessary. We also hold that the filing
 
 *133
 
 of class claims in estate administration proceedings is not authorized under the Florida Probate Code (the Code). The circuit court erred in ruling to the contrary-on these issues. Accordingly, we reverse the circuit court’s order to the extent that it denied the motion to strike the claim filed on behalf of the class and granted the claimants a six-month extension to amend the class claim.
 

 I. THE FACTS AND PROCEDURAL HISTORY
 

 Frank D’Alessandro (the Decedent) died on September 17, 2007, at the age of fifty-two. At the time of his death, the Decedent was a resident of Lee County, Florida. The Decedent was in the real estate business, and he left an estate with substantial assets. The Decedent died testate, and his will named Jan Baillargeon (the Personal Representative) to serve as the personal representative of his estate. After the will was admitted to probate, letters of administration were issued to the Personal Representative on October 12, 2007. The first publication of notice to creditors occurred on October 19, 2007.
 

 When the Decedent died, he was one of several defendants named in a class action that was then pending in the United States District Court for the Middle District of Florida. Randolph Sewell and Daphne Se-well (the Sewells) had filed the class action on May 80, 2007, on behalf of themselves and all others similarly situated against a number of entities and individuals, including the Decedent. After letters of administration were issued to the Personal Representative, she was promptly substituted as a party defendant in the pending action. The Sewells then filed a first amended class action complaint (the Complaint) specifically naming the Personal Representative as a defendant.
 
 [1]
 

 The facts which formed the basis for the class action claims, as alleged in the Complaint, may be briefly summarized as follows: In 2003, several entities — including two companies with which the Decedent was associated — devised an investment scheme whereby preleased houses would be sold to investors with the expectation of above-market returns on their investments. The assumption underlying the investment scheme was the ability of the promoters and investors to enter into lease-to-own contracts with prospective tenants who would rent the houses for a relatively brief period and then exercise their options to purchase the property. When this occurred, the investors would pocket a tidy profit. That was the plan; the reality was very different. The real estate bubble burst, the expected tenants did not materialize, and the over-leveraged scheme collapsed. The investors who had already bought into the deal faced the dilemma of making substantial mortgage payments on empty houses or losing the properties to foreclosure.
 

 According to the Complaint’s allegations, the participation by the Sewells and the other members of the class in the defendants’ investment scheme included the following consequences: (1) the risk of losing their properties in foreclosure proceedings, (2) damages to their credit ratings, and (3) “substantial out-of-pocket expenses relating to the acquisition and financing of their investment properties.” The Complaint asserted claims for violations of the Securities Act of 1933, the Securities Exchange Act of 1934, SEC Rule 10b-5, and the Interstate Land
 
 *134
 
 Sales Full Disclosure Act, as well as claims for fraud, breach of contract, breach of the duty of good faith and fair dealing, and deceptive and unfair trade practices. Although the class action was pending when the Decedent died, the district court had not ruled that the action could proceed as a class action under Federal Rule of Civil Procedure 23 and it had not certified a class or classes of claimants.
 

 On January 16, 2008, within three months after the first publication of notice to creditors, the Sewells filed a statement of claim “both individually and on behalf of [a] class of claimants.” In their statement of claim, the Sewells identified the pending federal litigation, summarized the facts that led to the filing of the class action, and asserted that “[t]he amount of the claim is in excess of $150 million.” A copy of the Complaint was attached to the claim. The Sewells provided their names and address and the name and address of their attorney, but they did not list the names and addresses of the other members of the putative class.
 

 The Personal Representative moved to strike the claim to the extent that it was filed as a class claim on the following grounds: (1) the claim did not list the names of the other members of the purported class, (2) the claim did not list the addresses or post office addresses of the other members of the purported class, (3) the claim was not signed and verified by the other members of the purported class, and (4) the Sewells had not been certified as representatives of the purported class by the district court. The absence of class certification notwithstanding, the Personal Representative also asserted that “Florida law does not permit a claimant to file a claim on behalf of other unnamed claimants.”
 

 II. THE PARTIES’ ARGUMENTS
 

 At the hearing on her motion to strike, the Personal Representative argued that the Sewells’ class claim did not meet the requirements of the Code and the Florida Probate Rules. In particular, the Personal Representative relied on section 733.703, Florida Statutes (2007), and Florida Probate Rule 5.490. Section 733.703(1) states, in pertinent part, as follows: “A creditor shall file a written statement of the claim.” Rule 5.490(a) provides the essential details concerning the formal requirements of the requisite statement of claim:
 

 Form. A creditor’s statement of claim shall be verified and filed with the clerk and shall state:
 

 (1) the basis for the claim;
 

 (2) the amount claimed;
 

 (3) the name and address of the creditor;
 

 (4) the security for the claim, if any; and
 

 (5) whether the claim is currently due or involves an uncertainty and, if not due, then the due date and, if contingent or unliquidated, the nature of the uncertainty.
 

 The rule also outlines the circumstances under which a claim already filed may be amended. “If a claim as filed is sufficient to notify interested persons of its substance but is otherwise defective as to form, the court may permit the claim to be amended at any time.” Fla. Prob. R. 5.490(e). Similarly, section 733.704 provides: “If a bona fide attempt to file a claim is made but the claim is defective as to form, the court may permit the amendment of the claim at any time.”
 

 The Personal Representative did not challenge the sufficiency of the Sewells’
 
 *135
 
 individual claim.
 
 [2]
 
 But she argued that the claim was defective as to the purported class because it failed to state the names and addresses of the class members as required by rule 5.490(a)(3). In addition, the Personal Representative argued that the claim was also defective as to the purported class because the class members had failed to sign and verify the claim as required under the rule. In support of her arguments, the Personal Representative relied on the Fourth District’s decision in
 
 In
 
 re
 
 Estate of Gay,
 
 294 So.2d 668 (Fla. 4th DCA 1974). In the
 
 Gay
 
 case, the Fourth District held that the filing of a class claim was inconsistent with the requirements of section 733.16, Florida Statutes (1971).
 
 Id.
 
 at 670. Section 733.16 appeared in the former Florida Probate Law. The Fourth District also said that the filing of a class claim was in conflict with the public policy of this state favoring the speedy administration of decedents’ estates.
 
 Id.
 

 In response to the Personal Representative’s arguments, the Sewells made three points. First, they asserted that it was unnecessary for them to file a claim in the estate because the class action was pending at the death of the Decedent and the Personal Representative had been promptly substituted in the pending action as a party defendant. Thus, according to the Sewells, they only filed the statement of claim in the probate case “out of an excess of caution.” In support of their argument that filing a statement of claim in the probate case was unnecessary, the Sewells relied on
 
 In re Estate of Shaw,
 
 340 So.2d 506 (Fla. 3d DCA 1976), another case that construed section 733.16 of the former Florida Probate Law. Second, the Sewells sought to distinguish the Fourth District’s decision in
 
 Gay
 
 on various grounds. Finally, the Sewells argued that they should be granted leave to amend their statement of claim as soon as they were able to determine the names and addresses of the other members of the class.
 

 III. THE CIRCUIT COURT’S ORDER
 

 After the hearing, the circuit court entered an order denying the Personal Representative’s motion to strike the class claim. In its ruling, the circuit court dismissed the Fourth District’s decision in
 
 Gay
 
 as not controlling. Instead, the circuit court relied on the decision in
 
 Shaw.
 
 The circuit court explained its decision as follows:
 

 As in
 
 Shaw,
 
 the estate had notice because the action was pending when the [Decedent] died and the [Personal Representative] has been joined in the federal class [action]. Furthermore, Rule 5.490(e)[] provides that the court can permit the claim to be amended at any time if the claim as filed is sufficient to notify interested persons. As for the holding in
 
 Gay,
 
 the Court feels that it is an anomaly and is contrary to the Second District Court of Appeal’s holding in
 
 Fair v. W.B. Clement,
 
 202 So.2d 613 (Fla. 2d DCA 1967).
 

 In addition to denying the motion to strike, the circuit court allowed the Sewells an additional six months to amend their claim. Although the circuit court’s order did not expressly state the nature of the amendment that it authorized, the Sewells’ request was for leave to amend by stating the names and addresses of the other members of the class as soon as their identities could be determined. The cir
 
 *136
 
 cuit court also ordered that “a timely motion seeking an extension of time will be considered upon a showing of good cause.” This appeal followed.
 

 IY. THE STANDARD OF REVIEW
 

 The issue before us requires the interpretation of provisions of the Code and Florida Probate Rule 5.490. We apply a de novo standard of review to questions involving the interpretation of statutes and rules of court.
 
 See Arnold, Matheny & Eagan, P.A. v. First Am. Holdings, Inc.,
 
 982 So.2d 628, 632 (Fla.2008);
 
 Barco v. Sch. Bd.,
 
 975 So.2d 1116, 1121 (Fla.2008);
 
 Midway Servs., Inc. v. Custom Mfg. & Eng’g, Inc.,
 
 974 So.2d 427, 428 (Fla. 2d DCA 2007). Thus our review of the circuit court’s decision is de novo.
 

 V. DISCUSSION
 

 A. The Circuit Court’s Misplaced Reliance on Shaw
 

 The circuit court’s rationale for accepting the Sewells’ argument that it was unnecessary to file a claim on behalf of the unidentified members of the class was as follows: “[T]he estate had notice ... the action was pending when the [Decedent] died and the [Personal Representative] has been joined in the federal class [action].” However, the circuit court’s reliance on the decision in
 
 Shaw
 
 for this proposition was misplaced. In the
 
 Shaw
 
 case, the result was controlled by the former Florida Probate Law’s section 733.16, the predecessor to current section 733.702. Under the law then in effect, the statutory requirement for creditors to file their claims against the estate was subject to certain exceptions. One of these exceptions applied if suit was filed on the creditor’s claim and service of process was made on the personal representative within four months of the first publication of the notice to creditors. § 733.16(l)(a). Under this exception, if an action on the claim was pending at the death of the decedent and the personal representative was substituted as a party in the action within the period for filing claims, then filing a claim in the probate case was unnecessary.
 
 See Brown v. Wood,
 
 202 So.2d 125, 128 (Fla. 2d DCA 1967);
 
 Kornblum v. Heflin,
 
 183 So.2d 843, 845-46 (Fla. 2d DCA 1966). In
 
 Shaw,
 
 the Third District held that the facts of the case before it fell within the statutory exception of section 733.16(l)(a) to the requirement of filing a claim against the estate. 340 So.2d at 507.
 

 The statutory exception in the former Florida Probate Law for actions pending at the death of the decedent was not carried forward in the Code. On the contrary, section 733.702(2) provides:
 

 No cause of action, including, but not limited to, an action founded upon fraud or other wrongful act or omission, shall survive the death of the person against whom the claim may be made,
 
 whether or not an action is pending at the death of the person,
 
 unless a claim is filed within the time periods set forth in this part.
 

 (Emphasis added.) Thus the exception for actions pending at the death of the decedent is no longer in effect, and
 
 Shaw
 
 and similar cases that applied the exception in section 733.16(l)(a) are no longer authoritative on this question.
 
 See Spohr v. Berryman,
 
 589 So.2d 225, 228-29 (Fla.1991);
 
 Roberts v. Jassy,
 
 436 So.2d 394, 395-96 (Fla. 2d DCA 1983);
 
 Am. & Foreign Ins. Co. v. Dimson,
 
 645 So.2d 45, 47 (Fla. 4th DCA 1994);
 
 Lasater v. Leathers,
 
 475 So.2d 1329, 1330 (Fla. 5th DCA 1985).
 

 It follows that the filing of a claim on behalf of the unidentified members of the class was not made unnecessary by the pendency of the class action at the death of the Decedent and the prompt substitution of the Personal Representative in the
 
 *137
 
 pending federal action. The circuit court erred in ruling to the contrary. This conclusion leads us to the core question in this ease: Does the Code authorize the filing of class claims in estate administration proceedings? We begin our inquiry into this question by examining the Fourth District’s decision in
 
 Gay,
 
 a case decided under pre-Code law.
 

 B. In re Estate of Gay
 

 The Fourth District’s decision in
 
 Gay
 
 is the only reported Florida case that has addressed the issue of whether a class claim may properly be filed in a probate proceeding. Indeed, the parties inform us that a nationwide search has failed to disclose any other case that addresses this issue. Therefore,
 
 Gay
 
 — which the circuit court characterized as “an anomaly” — merits close examination. Although the Fourth District’s decision in
 
 Gay
 
 predates the Code,
 
 [3]
 
 the facts and procedural history in
 
 Gay
 
 are remarkably similar to the facts and procedural history in the case before us.
 

 In
 
 Gay,
 
 as in this case, a federal class action was pending against the decedent and other defendants when the decedent died. 294 So.2d at 669. The claimant, who had been approved by the federal court as the class representative, filed a claim in the probate proceedings “on behalf of himself and all others similarly situated.”
 
 Id.
 
 The executors of the estate moved to dismiss or strike the claim on the grounds “that it was unauthorized by [s]ection 733.16” and that it failed to state the names and addresses of the class members as required by the statute.
 
 [4]
 

 Id.
 
 The claimant moved to amend his claim “ ‘by adding the names and addresses of the class members when they are finally determined’ (in the Federal Court action).”
 
 Id.
 
 The circuit court denied the executors’ motion to dismiss or to strike the claim.
 
 Id.
 
 In addition, as in this case, the circuit court granted the claimant’s motion to amend the claim to list the names and addresses of the class members when they “have been finally determined in the Federal Court action.”
 
 Id.
 

 On the executors’ appeal from the circuit court’s order, the Fourth District framed the issue before it as “whether a ‘class claim’ satisfies the requirements of the nonclaim statute, [sjection 733.16, F.S. 1971, F.S.A.”
 
 Id.
 
 at 668. The Fourth District answered this question in the negative.
 
 Id.
 
 In accordance with its holding, the Fourth District reversed the circuit court’s order and remanded the case with directions to deny the claimant’s motion to amend and to grant the executors’ motion to strike the claim to the extent that it asserted a claim on behalf of any person other than the claimant.
 
 Id.
 
 at 670.
 

 In light of the absence of any other authority addressing the question before us, parts of the Fourth District’s explanation of the reasoning underlying its decision are worth quoting at length:
 

 We hold that a “class claim” which merely designates a class of persons
 
 *138
 
 without identifying the members of the class by name, place of residence[,] and post office address, and without being sworn to [by] each claimant or his authorized agent or attorney simply fails to meet the clear requirements of [section 733.16, F.S.1971, F.S.A.[,] and is a brutum fulmen as concerns the unnamed members of such class. Stated differently, every claimant having a claim against the estate of a decedent, who is not within one of the several exceptions expressly provided in the statute, must in person or through agent or attorney timely file a claim in the manner prescribed by the statute or else the claim becomes void....
 

 Inherent in the plain language of the statute is the concept that in order for a claim against the estate to be valid, it must be filed by a named claimant, in person or by his authorized agent or attorney, in the manner, form and time as prescribed. Nothing in the statute infers or implies that one may file some type of blanket claim on behalf of unnamed (and perhaps unknown) members of some designated group or class of persons and thereby effectively preserve the claim of each and every person who at a subsequent date may be able to establish that he qualifies for the designated group or class. Such would not only be too indefinite as to the identity of the claimants, but worse, it would also leave open and indefinite the time when such claimants finally would be determined and designated by name, residence[,] and post office address. Such a result is contrary to the announced public policy of this state which requires that estates of decedents be speedily and finally determined.
 
 See
 
 []
 
 In re Brown's Estate,
 
 Fla.1960, 117 So.2d 478.
 

 Gay,
 
 294 So.2d at 670.
 

 Thus the rationale of the Fourth District’s decision in
 
 Gay
 
 was twofold. First, the
 
 Gay
 
 court held that the class claim failed to comply with the requirements of the statute because it failed to identify the names and addresses of the other members of the class. Second, the court expressed concern that if class claims were allowed in probate, the delays inherent in determining the identity of the class claimants would unnecessarily delay the closing of decedents’ estates.
 

 The 1971 version of the Florida Probate Law that was controlling in
 
 Gay
 
 contained a provision authorizing the amendment of claims similar to section 733.704 and rule 5.490(e). Former section 733.17 provided: “If a bona fide attempt to file a claim is made by any creditor or other claimant but it is defective as to form, the county judge in his discretion may permit the amendment of such claim at any time before payment.” The Fourth District’s rejection of the possibility that the claimant might be allowed to amend the class claim later when the identity of the class claimants was determined turned on its interpretation of the distinction between form and substance in the probate claims process:
 

 [The executors] also contend[] that the court erred in allowing claimant to amend the claim pursuant to F.S. [s]ection 733.17, F.S.A.[,] so as to permit the names and addresses of those on whose behalf the claim was filed to be specified at a subsequent time when the members of the class “had been finally determined.” Whether to allow an amendment when the claim is defective in form is a matter left to the court’s discretion, and if we viewed this amendment as one of form only we would not disturb the trial court’s exercise of that discretion. However, in our judgment this was not an amendment remedying a defect in
 
 *139
 
 form, but rather was tantamount to permitting a claim to be initially filed on behalf of each such person at some subsequent time beyond the period set by the statute. Consequently, it is our view that this was not an amendment allowable under [sjection 733.17, F.S.1971, F.S.A.
 

 Gay,
 
 294 So.2d at 670. Taking their cue from the Fourth District’s analysis of the propriety of an amendment to the class claim at issue in
 
 Gay,
 
 the Sewells’ argument in support of the circuit court’s decision to allow the amendment focuses on the distinction between form and substance.
 

 C. Form vs. Substance: In Light of the Statutory Changes, Is Gay Distinguishable?
 

 The Sewells seek to distinguish
 
 Gay
 
 on the ground that the requirements concerning the information to be furnished in a statement of claim that appeared in former section 733.16 no longer appear in the statutes and have been moved to the Florida Probate Rules.
 
 See
 
 Fla. Prob. R. 5.490(a). In the Sewells’ view, which the circuit court shared, a failure to comply with the requirements of procedural rules is necessarily a matter of form and not of substance. Accordingly, matters of procedural form are subject to correction by subsequent amendment under rule 5.490(e). Thus the Sewells argue that
 
 Gay
 
 ⅛ rationale has been undermined and the decision is no longer good law. In their view, the omission to state the names and addresses of the class claimants is a matter of form not affecting the validity of the class claim. Instead, the omission may be corrected by an appropriate amendment as soon as the additional information becomes available.
 

 It is true that Florida courts have adopted a liberal approach to the amendment of claims in probate to correct formal defects that do not affect the substantial rights of the parties. In the case of
 
 Farr v. Clement,
 
 202 So.2d 613, 614 (Fla. 2d DCA 1967), cited by the circuit court in support of its decision, this court said: “Amendments to correct defects in the form of claims filed against decedents’ estates have been without exception freely allowed in Florida and is in keeping with the judicial philosophy of the courts of this State which have taken as their touchstone substance and not procedural form.” This liberal approach to the amendment of claims in probate to correct defects in form is reflected in several decisions.
 
 See, e.g., Bedell v. Wilson (In re Estate of Grist),
 
 83 So.2d 860, 862 (Fla.1955);
 
 Black v. Walker,
 
 140 Fla. 48, 191 So. 25, 26 (1939);
 
 First Union Nat’l Bank of Fla. v. Aftab,
 
 689 So.2d 1137 (Fla. 4th DCA 1997). However, an amendment of a claim outside of the claims period is impermissible if it seeks to change matters of substance, e.g., the nature or amount of the claim.
 
 See Estate of Shearer ex rel. Shearer v. Agency for Health Care Admin.,
 
 737 So.2d 1229, 1231-32 (Fla. 5th DCA 1999);
 
 Grayson v. Maeder,
 
 186 So.2d 796, 798 (Fla. 3d DCA 1966).
 

 Like the
 
 Gay
 
 court, we think that amending a statement of claim to list hundreds of additional creditors changes a matter of substance rather than merely correcting a formal defect. Such an amendment affects the substantial rights of interested persons because it allows some creditors — but not others — to obtain a claim without filing an individual statement of claim within the required time. Thus we disagree with the view advanced by the Sewells and adopted by the circuit court that rule 5.490(e) constitutes authority for allowing an amendment to list the names and addresses of the members of the class once they are ascertained. Thus, to the extent that the class claim is defec
 
 *140
 
 tive, an amendment to cure the problem made after the applicable time limit for filing claims will be unavailing.
 

 D. Exploring the Issue of Class Claims in Probate
 

 1. Introduction: The Code and the Rules
 

 Qur conclusion that
 
 Gay
 
 cannot be distinguished leads us to the question of whether the Code sheds any light on the propriety of filing a class claim. Section 738.703 addresses the subject of “Form and manner of presenting claim.” But the statute tells us only that “[a] creditor shall file a written statement of the claim.” As we have seen, rule 5.490(a) adds essential details to the statute’s bare requirement that a creditor file a written statement of claim. The rule’s requirements that the claim state the creditor’s name and address and be verified form the basis for the Personal Representative’s argument that class claims are unauthorized because they cannot meet the basic requirements of the rule.
 

 However, rule 5.490(a) is not the last word on the subject of the proper format of claims. The Code itself broadly defines a “claim” as “a liability of the decedent, whether arising in contract, tort, or otherwise, and funeral expense.” § 731.201(4). “[A] creditor is one who holds a ‘claim.’ ”
 
 Summit Pool Supplies, Inc. v. Price,
 
 461 So.2d 272, 273 (Fla. 5th DCA 1985). The statute’s definition of “claim” is all-encompassing, and it is certainly expansive enough to include a claim held by a class of creditors. Moreover, nothing in the Code or the Florida Probate Rules expressly bars the filing of a class claim in an estate administration proceeding. The requirements of rule 5.490 that a statement of claim be verified and state the name and address of the creditor do not expressly prohibit the filing of a class claim; those requirements simply do not address the question. Therefore, an argument can be made that the text of the Code and the rules are inconclusive on the question of the propriety of filing a class claim in an estate administration proceeding.
 
 Cf. In re Am. Reserve Corp.,
 
 840 F.2d 487, 492-93 (7th Cir.1988) (making a similar argument in the context of the Bankruptcy Code and Bankruptcy Rules).
 

 2. The Treatment of Class Claims in Bankruptcy
 

 In light of the absence of express guidance from the statute and the paucity of case law, we have looked beyond probate to bankruptcy law. The bankruptcy courts employ a claims process that is analogous to the handling of creditors’ claims in probate. See 11 U.S.C. §§ 501-511; Bankruptcy Rules 3001-3008. Thus the treatment of class claims in bankruptcy proceedings may illuminate our inquiry into the appropriate rule to follow with regard to the filing of class claims in probate.
 

 Subject to certain limitations, class claims may be allowed in bankruptcy proceedings.
 
 [5]
 

 See In re Birting Fisheries, Inc.,
 
 92 F.3d 939, 939-40 (9th Cir.1996);
 
 Reid v. White Motor Corp.,
 
 886 F.2d 1462, 1469-70 (6th Cir.1989);
 
 In re Charter Co.,
 
 876 F.2d 866, 873 (11th Cir.1989);
 
 Am. Reserve,
 
 840 F.2d at 493.
 
 But see In re Standard Metals Corp.,
 
 817 F.2d 625, 632 (10th Cir.),
 
 vacated in part only on other grounds on rehearing,
 
 839 F.2d 1383 (10th
 
 *141
 
 Cir.1987). The primary argument in favor of allowing the filing of class claims in bankruptcy is to ensure that all of the debtor’s creditors may share equally in the assets available for distribution from the bankruptcy estate:
 

 Outside of bankruptcy, class actions aggregate claims and permit both compensation and deterrence that are otherwise impossible. The same debts should be pursued inside bankruptcy — for other creditors have no right to the higher share of the debtor’s assets they can achieve by excluding rival creditors at the threshold. The class proof of claim may be essential to discover what the bankrupt’s entire debts are, and therefore who should be paid what.
 

 Am. Reserve,
 
 840 F.2d at 489-90 (footnote omitted). This argument applies with equal force in probate. Among the primary goals of the probate process are collecting the decedent’s assets and providing to all of a decedent’s creditors a forum in which they may present their claims.
 
 Cf. Glidden v. Gutelius,
 
 96 Fla. 834, 119 So. 140, 143 (1928) (“The general duties of an executor are to collect the effects of the decedent, to pay the claims against his estate, and to distribute the residue to those entitled thereto.”). A refusal to recognize class claims in probate would tend to make it more difficult for class claimants to obtain payment of their claims from the probate estate.
 

 3. Other Considerations
 

 The argument in favor of allowing class claims in probate based on the goal of promoting equality of distribution among all of the decedent’s creditors has some persuasive force. Nevertheless, we conclude that countervailing factors are more compelling. The rationale for our conclusion on this point stems from the absence of any legislative effort to abrogate the Fourth District’s decision in
 
 Gay
 
 for over thirty-five years.
 

 It is within the province of the legislature to prescribe statutes providing for the orderly administration of decedent’s estates.
 
 See Twomey v. Clausohm,
 
 234 So.2d 338, 340 (Fla.1970);
 
 see also Mudarri v. Gillespie,
 
 226 So.2d 808, 812 (Fla.1969) (“It is apodictic that the administration of estates of decedents is a matter which is within the power of the legislature to prescribe.”). With the enactment of the Code, the legislature has exercised its prerogatives by adopting a comprehensive framework for the administration of decedent’s estates.
 
 See
 
 § 731.102 (“This code is intended as unified coverage of its subject matter.”). The Code’s provisions concerning creditors’ claims are particularly complete and detailed.
 
 See
 
 §§ 733.701-.710. Since the Code went into effect in 1976, the legislature has amended it repeatedly; a particularly extensive revision took effect in 2002.
 
 See
 
 ch. 2001-226, §§ 4 through 185,195, Laws of Fla.
 

 Despite the Code’s comprehensive coverage of the administration of decedents’ estates in general and creditors’ claims in particular, it is silent on the subject of class claims. As we have already noted, the Fourth District’s decision in
 
 Gay
 
 is the only reported authority in Florida on the subject of the filing of class claims in probate. The
 
 Gay
 
 case was decided under the Florida Probate Law in 1974, more than thirty-five years ago. Thus it is pertinent to note “that the legislature is presumed to know the judicial constructions of a law when enacting a new version of that law.”
 
 Brannon v. Tampa Tribune,
 
 711 So.2d 97, 100 (Fla. 1st DCA 1998) (citing
 
 Collins Inv. Co. v. Metro. Dade County,
 
 164 So.2d 806 (Fla.1964)). “Furthermore, the legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is
 
 *142
 
 expressed in the new version.”
 
 Id.
 
 (citing
 
 Deltona Corp. v. Kipnis,
 
 194 So.2d 295 (Fla. 2d DCA 1966)). Thus, in the absence of any reference to the filing of class claims in the Code either when it was enacted or in the multiple subsequent amendments to it, the legislature must be presumed to have adopted the Fourth District’s holding in
 
 Gay
 
 that class claims may not be filed in probate. Accordingly, we conclude that any change in the probate claims process to allow the filing of class claims must come from the legislature instead of through a judicial construction of the Code by this court that would be at odds with the Fourth District’s holding in
 
 Gay.
 

 4. Equity, Fair Play, and Substantial Justice
 

 Before concluding, we address the Sewells’ argument that it would be inequitable to permit the Decedent’s estate to escape liability for his alleged conduct by disallowing the class claim. In their answer brief, the Sewells state:
 

 The fraudulent conduct described in the Complaint has caused substantial harm to hundreds of unsophisticated investors, mainly retirees and many others living on a fixed or modest income, who now face foreclosure and financial ruin as a result of [the Decedent’s] actions. It would do tremendous violence to the notion of justice to allow [the Decedent’s] estate to avoid liability through its hypertechnical legal argument....
 

 Based on this argument, the Sewells conclude that the result we reach here will “offend traditional notions of fair play and substantial justice.” We disagree.
 

 Of course, we cannot assess the merits of the Sewells’ class claim against the Decedent’s estate and the other defendants. However, we are convinced that the result we reach in this case is not one that “offends traditional notions of fair play and substantial justice.” The class claims that have been asserted in the federal action are not based on little-known facts of which the members of the class might remain ignorant. Moreover, the class claims are not for small amounts that do not warrant the attention of the individual class members and that require a class champion to pursue them efficiently. On the contrary, the Sewells have alleged in the Complaint that the individual members of the class face substantial financial losses resulting from the defendants’ actions. Thus, to the extent that the class members “face foreclosure and financial ruin as a result of [the Decedent’s] actions,” they should be acutely aware of the general outline of the facts that give rise to their claims.
 

 Under these circumstances, it does not seem unfair to us to require the individual class claimants to take the relatively simple step of filing a statement of claim with the probate court in order to preserve their claims against the Decedent. A statement of claim may be filed on a simple, one-page form that is designed to be prepared and filed by nonlaw-yers. “[T]he filing of a statement of claim against an estate is not an appearance in court or the filing of a ‘pleading’ and therefore is not the practice of law.”
 
 Summit Pool Supplies,
 
 461 So.2d at 274. No filing fee may be imposed on a creditor for filing a statement of claim. § 733.703(1). If— speaking hypothetically — the maintenance man who mowed the Decedent’s lawn must file a statement of claim to recover a relatively small sum for the final month’s lawn service, then there is nothing inequitable about requiring the individual members of the class to file statements of claim to preserve their claims to the substantially
 
 *143
 
 larger amounts alleged to be due them.
 
 [6]
 
 Furthermore, despite the disallowance of the class claim, the class representatives retain their rights to pursue the class action in federal court on behalf of the putative class members against the remaining defendants.
 

 VI. CONCLUSION
 

 For the foregoing reasons, we reverse the circuit court’s order to the extent that it denied the Personal Representative’s motion to strike the class claim and granted the Sewells’ motion to amend their claim. We remand this case to the circuit court for the entry of an order striking the Sewells’ statement of claim to the extent that it attempts to assert claims on behalf of persons other than themselves.
 

 Reversed and remanded with directions.
 

 DAVIS, J., and FULMER, CAROLYN K., Senior Judge, Concur.
 

 [1]
 

 . The Complaint named three persons in addition to the Sewells as plaintiffs and class representatives. These persons are Moses Eshkenazi, Therese Eshkenazi, and Henriette Eshkenazi.
 

 [2]
 

 . In her motion to strike, the Personal Representative contended that the Sewells’ claim was defective because it stated that it was a contingent claim but failed to state the nature of the uncertainly as required by rule 5.490(a)(5). The Personal Representative waived this argument at the hearing.
 

 [3]
 

 . The Fourth District decided
 
 Gay
 
 on May 24, 1974. The Code was originally enacted as part of chapter 74-106, Laws of Florida, to take effect in accordance with section four of the Act on July 1, 1975. Chapter 74-106 was approved by the governor on May 31, 1974, and filed in the office of the secretary of state on the same day. In chapter 75-220, the legislature made extensive amendments to the Code. Under section 113 of chapter 75-220, the effective date of the Code was postponed until January 1, 1976.
 
 See
 
 § 731.011, Fla. Stat. (2007).
 

 [4]
 

 . Section 733.16(1) required, in pertinent part, that a "claim or demand ... shall be in writing and contain the place of residence and post-office address of the claimant, and shall be sworn to by the claimant, his agent or attorney.”
 

 [5]
 

 . The filing of class claims in bankruptcy is a complex subject. For an introduction to this topic, see Leonard H. Gerson, Class Proofs of Claim and Class Actions in Bankruptcy: Clarifying the Law, Improving the Process, and Expanding the Use of Class Actions, 17 J. Bankr. L. & Prac. 6 Art. 2 (2008).
 

 [6]
 

 . Some of the individual class members may have filed claims against the Decedent's estate. The "Case Summary” included in the record on appeal reflects the filing of numerous claims in the estate. However, our record does not include copies of the individual claims.